COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Bumgardner
Argued at Salem, Virginia


LAWRENCE W. LANGLEY
                                          OPINION BY
v.  Record No. 1390-97-3          JUDGE JAMES W. BENTON, JR.
                                           MAY 12, 1998
ANNE P. JOHNSON


             FROM THE CIRCUIT COURT OF MONTGOMERY COUNTY
                         Ray W. Grubbs, Judge

          H. Gregory Campbell, Jr., for appellant.

          Margaret E. Stone (Edwin C. Stone; Stone,
          Harrison, Turk & Showalter, on brief), for
          appellee.


     Lawrence W. Langley appeals from the trial judge's ruling

that payments made under a settlement agreement to his former

wife, Anne P. Johnson, were spousal support payments that

survived the wife's remarriage.  We hold that the provisions of

Code §§ 20-109 and 20-109.1 acted to terminate the husband's

spousal support obligation upon the wife's remarriage, and we

reverse the trial judge's order.

                              I.

     On August 26, 1991, the parties were divorced by a decree

that affirmed, ratified, and incorporated by reference the

parties' settlement agreement.  Under the heading "Spousal

Support and Separate Maintenance," Section 3.02 of the agreement

provides that the husband "agrees to pay [the wife] an amount

equal to $275.00 cash, per week, until her death."  The wife

remarried on December 29, 1991.  The husband continued his

payments for almost four years after the wife's remarriage. When he ceased making his payments in 1995, the wife filed a motion for judgment seeking enforcement of the payment obligation.

The trial judge found that the language in the separation agreement was "plain, simple, clear and unambiguous" and obligated the husband to pay spousal support until the wife's death. Noting that "[r]emarriage can only occur prior to death," the trial judge ruled that "there is no speculation as to the termination of support" and that Code § 20-109.1 "does not apply to the agreement." The husband appeals from the trial judge's ruling that the wife's remarriage did not terminate the husband's spousal support obligation.

## II.

We first address the wife's contention that the weekly payments were not spousal support but, rather, were in the nature of a property distribution. The wife argues that although the husband's obligation to make weekly payments is contained under the heading "Spousal Support and Maintenance," the agreement provides that "[p]aragraph titles or headings . . . are inserted as a matter of convenience only and for reference and in no way define or describe the scope of this Agreement or any provision thereof." Because no other language in the agreement describes the weekly payments as spousal support, she argues that the payments are not "spousal support." Thus, she argues Code §§ 20-109 and 20-109.1 do not apply.

-2-

"Property settlement agreements are contracts; therefore, we must apply the same rules of interpretation applicable to contracts generally." Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985). Where the agreement is plain and unambiguous in its terms, the rights of the parties will be determined from the terms of the agreement. See Harris v. Woodrum, 3 Va. App. 428, 432, 350 S.E.2d 667, 669 (1986). "It is the court's responsibility to determine the intent of the parties from the language they employ." Bender-Miller Co. v. Thomwood Farms, Inc., 211 Va. 585, 588, 179 S.E.2d 636, 639 (1971).

Three distinct obligations are specified under the heading "Spousal Support and Separate Maintenance": the parties agreed to share equally the proceeds of all certificates of deposit; the husband agreed to make weekly payments to the wife; and the husband agreed to maintain a life insurance policy for the wife's benefit. Although the parties' obligation to share equally the proceeds of the certificates of deposit may have characteristics of a property division, the weekly payments do not. The agreement does not relate the weekly payments to any property interest of the parties and contains no indication that the weekly payments were intended to adjust the parties' rights and interest in their property.[1]

---

[1]Under the heading, "Equitable Distribution of Real and Personal Property," the agreement contains numerous provisions that divide the parties' real and personal property. That part of the agreement also contains provisions apportioning the parties' debts.

The agreement provides that the weekly payments are to be annually adjusted by the consumer price index. That type of adjustment suggests the payments were made to provide for the wife's necessities and staples of life. Likewise, the stipulation that the weekly payments are to terminate upon the wife's death implies that the payments bear upon the wife's personal circumstances. We conclude, therefore, that these characteristics denote periodic payments in the traditional nature of spousal support and maintenance. See Moseley v. Moseley, 19 Va. App. 192, 196, 450 S.E.2d 161, 164 (1994) (whether a payment is spousal support and maintenance or a property distribution is determined by the function that payment is intended to serve). See also In re Zuccarell, 181 B.R. 42, 44-45 (Bankr. N.D. Ohio 1995) (recognizing that, typically, a property division is not affected by a change in the personal circumstances of the recipient spouse); In re Ackley, 186 B.R. 1005, 1010 (Bankr. N.D. Ga. 1994) (noting that the structure of a provision – whether payment is lump sum or periodic, method of payment, terms of payment, amount of payment, whether payment is modifiable, and whether payment is subject to contingencies – is an important element in determining whether the provision is one for support or a property division); In re Edwards, 162 B.R. 83, 85 (Bankr. D. Conn. 1993) (holding that an obligation is in the nature of alimony "when it is intended to provide support for the spouse, rather than an equalization of property rights"); In re

-4-

Jensen, 17 B.R. 537, 540 (Bankr. W.D. Mo. 1982) (noting that provisions for payment of expenditures for necessities and staples of life reflect a support function).

From a plain reading of the agreement, we conclude that the parties intended this obligation to be one for spousal support and maintenance. Even if we could conclude that the terms of the agreement are ambiguous, the evidence proves that the parties treated the payments as spousal support. The correspondence between the parties referred to the obligation as "alimony." On his tax returns, the husband also treated the payments as spousal support. Accordingly, we analyze the effect of Code §§ 20-109 and 20-109.1 upon the spousal support obligation contained in the agreement.

### III.

Relying upon Miller v. Hawkins, 14 Va. App. 192, 415 S.E.2d 861 (1992); Radford v. Radford, 16 Va. App. 812, 433 S.E.2d 35 (1993); MacNelly v. MacNelly, 17 Va. App. 427, 437 S.E.2d 582 (1993); and Gayler v. Gayler, 20 Va. App. 83, 455 S.E.2d 278 (1995), the husband contends that his support obligation terminated by operation of Code §§ 20-109 and 20-109.1 because of the absence of express language in the agreement stating that the spousal support would survive the wife's remarriage. We agree.

When this case was decided, Code § 20-109 denoted the trial judge's power to award spousal support and to change existing awards, and it further provided, in pertinent part, that "[u]pon

the death or remarriage of the spouse receiving support, spousal support shall terminate <u>unless otherwise provided by stipulation or contract</u>."  (Emphasis added).  Effecting the same policy, Code § 20-109.1 provides, in relevant part, as follows:

> Where the court affirms, ratifies and incorporates by reference in its decree such agreement or provision thereof, it shall be deemed for all purposes to be a term of the decree, and enforceable in the same manner as any provision of such decree.  The provisions of this section shall apply to any decree hereinbefore or hereinafter entered affirming, ratifying and incorporating an agreement as provided herein.  Upon the death or remarriage of the spouse receiving support, spousal support shall terminate <u>unless otherwise provided by stipulation or contract</u>.

(Emphasis added).

In <u>Miller v. Hawkins</u>, 14 Va. App. 192, 415 S.E.2d 861 (1992), we considered the following question: "[i]f spousal support payments are to continue after remarriage of the recipient, must the agreement or decree include specific language disclosing that to be the intent of the parties?"  <u>Id.</u> at 196, 415 S.E.2d at 864.  The agreement contained the husband's promise to pay the wife spousal support in certain amounts and at designated intervals.[2]  The wife remarried, and the husband

---

[2]The provision at issue in <u>Miller</u> was the following:

> Husband agrees to pay Wife a reasonable sum for spousal support.  Until such time as the child of the parties shall attain the age of 18 years or graduates from high school, whichever shall last occur, Husband agrees to pay Wife as spousal support the sum of $100.00 per week.  Thereafter, Husband agrees

discontinued payments. In reversing the trial judge's award of

spousal support arrearages in favor of the wife, we noted the

following:

> While no Virginia appellate court has decided whether or what specifically is required [to avoid the termination provisions of Code §§ 20-109 and 20-109.1], . . . [w]e adopt the views expressed in several opinions of appellate courts in sister states and hold that <u>the agreement must contain clear and express language evincing the parties' intent that spousal support will continue after remarriage; otherwise, remarriage terminates the obligation</u>.
>
> The public policy clearly declared by Code §§ 20-109 and 20-109.1 is that spousal support does not survive the recipient's remarriage. To create an exception to that policy, the agreement must be equally clear. If the parties intended that spousal support would continue after remarriage, they could have included such a requirement in the agreement. We do not construe the language contained in the agreement before us to establish an intent that husband was obligated to continue spousal support to wife after her remarriage.

<u>Id.</u> at 195-97, 415 S.E.2d at 863-64 (footnote omitted) (emphasis

---

> to pay Wife the sum of $200.00 per week as spousal support until the child of the parties attains the age of 23 years or completes 4 years of college education, whichever event shall first occur; provided, however, that in the event Wife should pay in full the first lien deed of trust indebtedness owed against the above-described real estate prior to her re-marriage, then the weekly amount to be paid by Husband to Wife as spousal support shall be re-negotiated or set by the Court if the parties cannot agree.

14 Va. App. at 194, 415 S.E.2d at 862.

added).

In <u>Radford v. Radford</u>, 16 Va. App. 812, 813, 433 S.E.2d 35, 36 (1993), the agreement provided that "the husband shall pay unto the wife the sum of $200.00 per month for a period of 5 years."  Reiterating the public policy discussed in <u>Miller</u>, we held as follows:

> [S]pousal support provided for in an agreement terminates upon the remarriage or death of the person to whom the support is payable, unless the agreement expressly provides for its continuation.  [The language of Code §§ 20-109 and 20-109.1] contemplates an expressed, not implied, provision that support shall not terminate upon death or remarriage.  By resolving ambiguity, Code § 20-109 reduces litigation.  To permit its mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose.

<u>Id.</u>  Because the agreement "contained no express provision for continuation upon the death or remarriage of the spouse receiving support," we ruled that "the spousal support terminated upon the wife's remarriage."  <u>Id.</u> at 814, 433 S.E.2d at 37.

The case we decide today is most similar to <u>MacNelly v. MacNelly</u>, 17 Va. App. 427, 437 S.E.2d 582 (1993), where we noted that the "issue in this case is the application of that statute to the terms of a property settlement agreement which stated expressly that the death of either party would terminate the obligation but did not mention the effect of the wife's remarriage."  <u>Id.</u> at 429, 437 S.E.2d at 583-84.  The agreement in <u>MacNelly</u> provided that the husband would make monthly payments to

the wife for seven years and that "[i]n the event the husband or wife dies before February 1, 1996, then the obligation for support and maintenance by the husband to the wife shall cease."[3] Id. at 428, 437 S.E.2d at 583. The wife argued that "the inclusion of a provision concerning termination of the obligation upon death of either party, coupled with the absence of reference to the effect of remarriage, shows the parties' intent to avoid the statute." Id. at 430, 437 S.E.2d at 584. We ruled, however, that "in order to accomplish the stated objective of the statute to resolve ambiguity and thereby reduce litigation, any attempt to abrogate the effect of the statute requires express language either citing the statute or expressly stating that remarriage does not terminate the obligation." Id.

As in MacNelly, the agreement in this case provides for the eventuality of the recipient spouse's death and fails to mention

---

[3]The entire provision read as follows:

> The husband agrees to pay wife for her support and maintenance SEVEN THOUSAND DOLLARS ($7,000) in cash per month; the first payment is to be made on the first of February 1989, and the payments shall continue on the first day of each and every month thereafter until the first day of February 1996, at which time support and maintenance to the wife shall cease with that last payment. These sums are taxable as income to the wife and deductible by the husband. In the event that the husband or wife dies before February 1, 1996, then the obligation for support and maintenance by the husband to the wife shall cease.

MacNelly, 17 Va. App. at 428, 437 S.E.2d at 583.

the effect of remarriage.  The parties' agreement merely states that the husband shall pay the wife "an amount equal to $275.00 cash, per week, until her death."  The rulings in Radford and MacNelly could not be clearer.  The absence of express language stating that remarriage will not terminate the obligation mandates the conclusion that spousal support terminates upon remarriage by operation of the statutes.  See Code §§ 20-109, 20-109.1.

The wife argues, however, that the agreement in this case is comparable to the agreement in Gayler v. Gayler, 20 Va. App. 83, 455 S.E.2d 278 (1995).  There, the agreement provided that "the payments [of spousal support] . . . shall terminate upon the Wife's remarriage or death," and it was modified by an addendum stating that "the payments . . . shall terminate only upon the Wife's death."  Id. at 85, 455 S.E.2d at 279.  We held "that the addendum's excision of the reference to remarriage and the addition of the word 'only' evince the parties' intent that spousal support would survive wife's remarriage."  Id. at 86, 455 S.E.2d at 280.  However, in a footnote to that holding, we made a significant disclosure:

> The use of the term "only" by the parties is alone not determinative of the issue.  Absent the reference to the effect of remarriage in the original agreement, the language of the addendum standing alone would not be sufficient to evince an intent of the parties to avoid the operation of Code §§ 20-109 and 20-109.1.

Id. at 86 n.2, 285 S.E.2d at 280 n.2.  Thus, Gayler turned on the

fact that the addendum's alteration of the original support provisions was a "critical change in the original agreement," which necessarily evinced in a clear and express fashion the parties' intent that the support would continue after remarriage. Id. at 86-87, 455 S.E.2d at 280.

In the agreement that we review in this appeal, no similar "critical change" clearly evinces the parties' intent to avoid operation of the statutes.  Indeed, the language of the parties' agreement is virtually identical to "the language of the [Gayler] addendum standing alone [which] would not be sufficient to evince an intent of the parties to avoid the operation of Code §§ 20-109 and 20-109.1."  20 Va. App. at 86 n.2, 285 S.E.2d at 280 n.2.  We reiterate our reasoning in Radford that the statutory "language contemplates an expressed, not implied, provision that support shall not terminate upon death or remarriage" and that "[t]o permit its mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose."  16 Va. App. at 813, 433 S.E.2d at 36.

IV.

Finally, the wife argues that regardless of this Court's decisions, the Supreme Court's decision of Wells v. Weston, 229 Va. 72, 326 S.E.2d 672 (1985), governs this case and mandates affirmance of the trial judge's order.  We disagree because Wells is not germane to the issue in this case.

As in this case, Wells involved a settlement agreement that

-11-

became part of the divorce decree.  The spousal support provision stated that "[h]usband shall pay to Wife the sum of $500.00 per month as alimony so long as Wife shall live."  229 Va. at 73–74, 326 S.E.2d at 673.  After the wife remarried, the husband discontinued payments.  The wife then filed a bill of complaint seeking specific performance of the spousal support obligation. Id. at 74, 326 S.E.2d at 673.  The husband argued at trial that the attorney who drafted the agreement represented both parties and told the husband the support provision was a "routine" provision commonly used in property settlement agreements to protect the wife.  The husband also argued that because of this advice from the attorney, the husband believed the clause would not bind him to pay the wife after she remarried.  Id. at 75, 326 S.E.2d at 674.

The trial judge found that although the attorney who drafted the agreement represented the wife, the attorney was a business acquaintance of the husband and advised the husband concerning the spousal support provision.  Finding the husband's testimony more credible, the trial judge ruled that the attorney's conduct had the appearance of impropriety.  The trial judge also ruled that the agreement was void for lack of mutuality and vacated the spousal support provision.  Id. at 74–75, 326 S.E.2d at 674.

Noting that the husband never disclosed his interpretation of the agreement to the attorney or the wife, the Supreme Court ruled that the husband's unexpressed mental reservations were

irrelevant.  See id. at 78-79, 326 S.E.2d at 676.  The Court ruled that the husband had read the agreement and "was fully capable of understanding the language used . . . [because there] was nothing technical, obscure, or ambiguous in the wording of the agreement and the decree."  Id. at 79, 326 S.E.2d at 677.  Based on these rulings, the Court held that the trial judge erred in finding a lack of mutuality.  Id.  However, the Court did not address either Code § 20-109 or Code § 20-109.1, and the Court gave no indication that the parties relied upon these statutes.  Accordingly, we conclude that Wells provides no guidance in interpreting the statutes.

V.

In summary, the versions of the statutes in effect when this case was decided contained the following language:  "Upon the death or remarriage of the spouse receiving support, spousal support shall terminate unless otherwise provided by stipulation or contract."  Code §§ 20-109 and 20-109.1.  When the legislature amended both statutes in 1987, it deleted the provision requiring the parties to obtain a judicial order to terminate spousal support upon the remarriage or death of the spouse receiving spousal support.  See 1987 Va. Acts, ch. 424, 694.

We have consistently ruled that the statutes declare a clear public policy that spousal support will not survive the recipient spouse's remarriage.  See Miller, 14 Va. App. at 197, 415 S.E.2d at 864.  The statutes were intended to resolve ambiguity and to

enable parties to govern themselves by clear rules without the necessity of seeking judicial intervention. See Radford, 16 Va. App. at 813, 433 S.E.2d at 36. To give effect to that policy, we have held that the statutory "language contemplates an expressed, not implied, provision [in agreements] that [spousal] support shall not terminate upon death or remarriage." Id. We will not negate the statutory policy "by inferring the intent of the parties." Id. at 814, 433 S.E.2d at 36.

Because the language of the agreement in this case failed expressly to state that the husband's support obligation would not terminate upon the wife's remarriage, the trial judge erred by inferring from the absence of express language an intent that support payments would continue. Accordingly, we reverse the order.

Reversed.