COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
          Bray, Annunziata, Bumgardner, Frank, Humphreys, Clements
          and Agee
Argued at Richmond, Virginia


SUZANNE M. K. RUBIO
                                                OPINION BY
v.   Record No. 2596-99-1             JUDGE JERE M. H. WILLIS, JR.
                                             JULY 24, 2001
ERNESTO G. RUBIO


UPON A REHEARING EN BANC


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                 Thomas S. Shadrick, Judge

        Barry Randolph Koch (Inman & Strickler,
        P.L.C., on brief), for appellant.

        Barry Kantor (Christie & Kantor, P.C., on
        brief), for appellee.

        Amicus Curiae:  The Virginia Bar Association
        Coalition on Family Law Legislation
        (Richard J. Byrd; Byrd Mische, P.C., on
        brief), for appellee.


     By opinion dated August 1, 2000, a panel of this Court

reversed the judgment of the trial court and ordered the

petition herein dismissed.  See Rubio v. Rubio, 33 Va. App. 74,

531 S.E.2d 612 (2000).  We stayed the mandate of that decision

and granted rehearing en banc.  Upon rehearing en banc, we

vacate the mandate of the panel decision and withdraw that

opinion, but reverse the judgment of the trial court and remand

the case for further proceedings.

## I.   BACKGROUND

Ernesto and Suzanne Rubio were married May 15, 1982.  They separated and on June 18, 1993, entered into a Stipulation Agreement, modified on August 23, 1994, providing that Mr. Rubio would pay to Ms. Rubio as spousal support $600 per month until such time as she should remarry or either party should die.  The agreement provided:

### Q.   INCORPORATION AND NON-MERGER

If a temporary, interlocutory or final judgment, order or decree of divorce is rendered in any proceeding between the parties hereto, this Agreement shall be affirmed, ratified and incorporated in such judgment, order or decree, and be enforceable under the general equity powers of the Court.  But notwithstanding such incorporation, this Agreement shall not be merged into such decree, but shall in all respects survive the same and be forever binding and conclusive upon the parties and their heirs, executors, administrators, and assigns.  Nothing herein shall be construed to prevent the decree or judgment in any such action from incorporation in full.

The parties were divorced by decree entered November 2, 1994, which provided, in pertinent part:

It is further ADJUDGED, ORDERED and DECREED that the Stipulation Agreement between the parties signed June 18, 1993 and the Modification dated August 23, 1994 be, and hereby are, found to be valid agreements, and are hereby ratified, affirmed and incorporated into and made a part of this Decree, and both parties shall comply with all terms and provisions of that Agreement and Modification.

The decree did not state whether the Stipulation Agreement was merged.

On August 23, 1999, Mr. Rubio sought termination or modification of his spousal support obligation on the ground that Ms. Rubio had "been habitually cohabiting with another person in a relationship analogous to marriage for one year or more, commencing on or after July 1, 1997."  See Code § 20-109(A).  Ms. Rubio acknowledged that she had been cohabiting in such a relationship since January 1997.

Code § 20-109(A) provides, in pertinent part:

> Upon petition of either party the court may increase, decrease, or terminate the amount or duration of any spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper.  Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court may decrease or terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would constitute a manifest injustice.[1]

In 1997, the legislature rewrote Code § 20-109(A) to insert the second sentence.  See 1997 Va. Acts, ch. 241.

---

[1] In 2000, the legislature substituted "shall" for "may decrease or" and substituted "be unconscionable" for "constitute a manifest injustice" in subsection (A) of Code § 20-109.  See 2000 Va. Acts, ch. 218.

In 1998, the legislature "amended and reenacted" Code § 20-109(A), adding the words "the amount or duration of any" to the first sentence.  See 1998 Va. Acts, ch. 604.  The Act specifically provided "[t]hat Section 20-109 of the Code of Virginia [is] . . . reenacted as follows."  Id.  It further provided "[t]hat the provisions of this Act shall apply only to suits for initial spousal support orders filed on or after July 1, 1998, and suits for modification of spousal support orders arising from suits for initial support orders filed on or after July 1, 1998."  Id.

The panel opinion held that by reenacting the statute, the Act embraced the statute in its entirety and that the quoted limitation upon the application of the Act was a limitation upon the application of the statute.  See Rubio, 33 Va. App. at 76-77, 531 S.E.2d at 613-14.  Recognizing that the legislature did not intend that result,[2] we vacate that holding.

## II.  THE STIPULATION AGREEMENT

In Hering v. Hering, 33 Va. App. 368, 373, 533 S.E.2d 631, 633-34 (2000), we said that

> [i]f the court accepts the agreement, its decree may merely approve, ratify or affirm the agreement, in whole or in part, without incorporating its provisions into the decree or ordering payment or compliance with its terms.  In that situation, the decree merely constitutes judicial approval of a private bilateral contract, and the provisions of the support agreement do not have the full

---

[2] See 2001 Va. Acts, ch. 720.

> force and effect of a court's decree and are
> not enforceable by the court's contempt
> powers. . . .

_Id._ (citations omitted).  Under those circumstances, the support

obligation is enforceable as a contract.

> "'Where . . . the circumstances are such
> that the incorporation of a property
> settlement in a decree, with directions that
> the parties perform all its obligations,
> merges the contract in the decree, the party
> who desires enforcement must enforce the
> decree and not the agreement itself.'"

_Id._ at 373, 533 S.E.2d at 634 (citations omitted).  Under those

circumstances, the support obligation is enforceable only as a

term of the decree.

On the other hand,

> "'[w]here the circumstances are such that
> the agreement, although incorporated or
> approved in the decree, is not merged
> therein, the parties may enforce it by suing
> on the agreement rather than on the
> judgment.'"  Where . . . the agreement was
> "incorporated but not merged" into the final
> decree, the agreement remained enforceable
> under either contract law or through the
> court's contempt power.

_Id._ at 373-74, 533 S.E.2d at 634 (citations omitted).

In _Hering_, the parties entered into a marital settlement

agreement dated February 28, 1995, requiring Mr. Hering to pay

spousal support to Ms. Hering.  The agreement provided that a

court might "affirm, ratify and incorporate" it into a divorce

decree but provided further "that this agreement shall survive

such incorporation and shall not be merged into any such

decree."  The divorce decree, entered March 3, 1995, provided "that the Property Settlement Agreement . . . is [] ratified, affirmed and incorporated, but not merged, into and made a part of this Final Decree of Divorce . . . ."  Mr. Hering proved that Ms. Hering had entered into a relationship of cohabitation analogous to marriage for more than one year commencing on or after July 1, 1997.  He sought termination of his spousal support obligation pursuant to Code § 20-109(A).  Noting that the provision of Code § 20-109(A) upon which Mr. Hering relied became effective July 1, 1997, we approved his concession that if his support obligation to Ms. Hering remained a vested contractual obligation, that obligation could not be impaired by subsequent legislation.  Holding that Mr. Hering was not entitled to relief, we said:

> [T]he parties' contract remained enforceable.  The parties expressly provided that their agreement was to be "incorporated, but not merged" into any final decree.  While ordering the parties to comply with the provision of the agreement, the final decree also expressly provided that the agreement was not merged.  [Mr. Hering's] argument glosses over the effect of the parties' express provision that the agreement not be merged into the final decree.  We are not at liberty to ignore a contractual provision specifically included by the parties.
>
> Our previous decisions and those of the Supreme Court of Virginia draw a distinction among those situations where an agreement is affirmed, where it is incorporated into a decree, or where, as here, the agreement is

> "affirmed, ratified, incorporated, but not
> merged" into the final decree.

Id. at 372-73, 533 S.E.2d at 633.

Citing Doherty v. Doherty, 9 Va. App. 97, 383 S.E.2d 759 (1989), Mr. Rubio argues that because the decree of divorce provided that the parties' agreements "are hereby ratified, affirmed and incorporated into and made a part of this Decree, and both parties shall comply [therewith]," the agreements merged into the decree and his support obligation is enforceable only as a provision of the decree. Such an obligation, he argues, is an ongoing matter of judicial determination, which does not enjoy immunity from abridgment of contract and is subject to subsequent legislation governing the determination of spousal support, specifically the 1997 amendment to Code § 20-109(A). This argument is refuted by the parties' express agreement and by the terms of the 1994 divorce decree.

The parties specifically agreed and provided that their Stipulation Agreement would not merge into a decree of divorce. The decree, while containing no order of non-merger, does not order merger. Furthermore, the Stipulation Agreement contains an express provision for non-merger, a provision incorporated by reference into the decree. Thus, no merger occurred, and we do not address what effect, if any, merger would have imposed upon Mr. Rubio's support obligation. That obligation remains an enforceable contract, excluded from the operation of Code

§ 20-109(A) and insulated by Code § 20-109(C) from judicial alteration.

### III. PUBLIC POLICY

Finally, Mr. Rubio argues that the 1997 amendment to Code § 20-109(A) bespeaks the public policy of the Commonwealth, placing cohabitation analogous to marriage, for purposes of spousal support, in the same posture as remarriage, requiring spousal support abatement in the absence of an express contractual provision for non-abatement.  See Langley v. Johnson, 27 Va. App. 365, 499 S.E.2d 15 (1998).  This argument depends upon giving retroactive effect to the 1997 amendment. Such an effect would accomplish a forbidden impairment of Ms. Rubio's contractual entitlement to support, see Hering, 33 Va. App. at 375, 533 S.E.2d at 634-35, and would violate Code § 20-109(C) (inhibiting the power of the court to award or consider modification of a decree to the extent that spousal support and maintenance are provided for in an incorporated agreement of the parties).

### IV. CONCLUSION

The judgment of the trial court is reversed, and this case is remanded to it for entry of a decree in accordance with the views herein stated.

Reversed and remanded.

Benton, J., concurring, in part, and dissenting, in part.

I concur in Part I of the opinion. For the reasons that follow, I dissent from Parts II and III.

When the husband filed his petition to terminate or decrease spousal support on the ground that his former wife was cohabiting with a man, Code § 20-109(A) read, in pertinent part, as follows:

> Upon order of the Court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court may decrease or terminate spousal support and maintenance unless (1) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would constitute a manifest injustice.

That statute complimented the portion of Code § 20-109.1 that provided: "Upon the death or remarriage of the spouse receiving support, spousal support shall terminate unless otherwise provided by stipulation or contract."

In Langley v. Johnson, 27 Va. App. 365, 499 S.E.2d 15 (1998); MacNelly v. MacNelly, 17 Va. App. 427, 437 S.E.2d 582 (1993); Radford v. Radford, 16 Va. App. 812, 433 S.E.2d 35 (1993), and Miller v. Hawkins, 14 Va. App. 192, 415 S.E.2d 861 (1992), we held that the public policy declared by Code §§ 20-109 and 20-109.1 is that spousal support does not survive the terminating events specified in those statutes unless the

parties' agreement contained express language that spousal support will continue beyond the terminating event. It is undisputed that the agreement in this case does not expressly provide for the continuation of spousal support to the former wife even if she "has been habitually cohabiting with another person in a relationship analogous to a marriage." Code § 20-109(A). Applying the logic of those cases, I would hold that the trial judge did not err in ruling that spousal support should be reduced because of the wife's cohabitation.

Citing Hering v. Hering, 33 Va. App. 368, 533 S.E.2d 631 (2000), the wife argues that applying the version of Code § 20-109.1, which was in effect when the husband's motion was filed but not in effect when the contract was formed, is a retroactive application of the statute that impairs her right to contract. The majority so holds. I disagree.

"In Virginia, divorce is a creature of statutes enacted in clear, detailed language." Milligan v. Milligan, 12 Va. App. 982, 987, 407 S.E.2d 702, 704 (1991). By well established case law, the incidents related to the creation and dissolution of marriage are "a social relation subject to the State's police power." Loving v. Virginia, 388 U.S. 1, 7 (1967) (citing Maynard v. Hill, 125 U.S. 190 (1888)). It is the marital relationship that gives rise to a claim for spousal support. Thus, to the extent the General Assembly has enacted legislation that determines when spousal support may be terminated, see Code

§§ 20-109 and 20-109.1, it is acting within the state's police powers to provide for the comfort and general welfare of its citizens.

Addressing the interrelationships between the impairment of contracts and the police power of a state, the Supreme Court has ruled as follows:

> "The contract clauses of the Federal Constitution and the Virginia Bill of Rights protect against the same fundamental invasion of rights."  1 A. Howard, Commentaries on the Constitution of Virginia 203 (1974).  The General Assembly "shall not pass any law impairing the obligation of contracts."  Va. Const. art. I, § 11.  See U.S. Const. art I, § 10 ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts.")  The Virginia contract clause has been interpreted by this Court in a manner similar to the treatment of the federal clause by the United States Supreme Court.  A. Howard at 207.

> Even though the language of the contract clause is unambiguous and appears absolute, it is not "the Draconian provision that its words might seem to imply."  Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 240 (1978).  The proscription against enacting statutes that impair the obligation of contracts does not prevent the State from exercising power that is vested in it for the common good, even though contracts previously formed may be affected thereby. "'This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.'"  Id. at 241 (quoting Manigault v. Springs, 199 U.S. 473, 480 (1905)).  The contract clause "does not operate to obliterate the [State's] police

power."  438 U.S. at 241.  And, as Mr. Justice Holmes wrote in Hudson County Water Co. v. McCarter, 209 U.S. 349, 357 (1908): "One whose rights . . . are subject to state restrictions, cannot remove them from the power of the State by making a contract about them."

Working Waterman's Ass'n v. Seafood Harvesters, Inc., 227 Va. 101, 109-10, 314 S.E.2d 159, 163-64 (1984).

With regard to private contracts, the United States Supreme Court has held that the contract clause only requires that "[l]egislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption."  United States Trust Co. v. New Jersey, 431 U.S. 1, 22 (1977).  Thus, when state statutes act to impair private contracts, the Supreme Court has "repeatedly held that unless the State is itself a contracting party, courts should '"properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."'"  Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S. 470, 505 (1987) (citations omitted).  I presume from the discussion in Working Waterman's Ass'n, that the Virginia contract clause is to be interpreted "in a manner similar to the treatment of the federal clause." 227 Va. at 109, 314 S.E.2d at 163.

I would hold, therefore, that the legislative amendment operates to allow the termination or reduction of spousal support in this case.  When adopting Code § 20-109(A), the

legislature clearly made a public policy choice and made it upon a reasonable condition.  In so doing, the legislature made a concession to the contractual rights of the parties by providing an exemption for those instances in which the parties by their contract expressly provided otherwise.  Here, we are called upon to apply a law to a matter on which the contract is silent.

Moreover, the statute specifically addresses the applicable date for the legislation by reference to conduct that occurs "one year or more commencing on or after July 1, 1997."  Code § 20-109(A).  By this specific reference, the legislature expressed its clear intention.  The following language from one of our precedents is instructive:

> [It is] apparent from the language of the statute, as well as the necessary consequences of the act, that it applies to cases filed after the effective date of the statute, regardless of when the cause of action arose.  To hold otherwise would require courts a generation from now to apply outmoded principles of law.  Indeed, we would postpone solving for some time the very inequity the legislature sought to remedy.  Disputes would arise over when the grounds for divorce occurred and which support and property laws applied.  The legislature could not have intended that result.

Booth v. Booth, 7 Va. App. 22, 26, 371 S.E.2d 569, 572 (1988).

Because our Hering decision is contrary to the principle decided in Working Waterman's Ass'n, and, indeed, fails to reference that decision or to discuss that decision's ruling

regarding the legislature's power to impair contractual obligations, I would hold that <u>Hering</u> was wrongly decided.

For these reasons, I would hold that Code § 20-109(A) applies to the contract at issue in this case and does not impermissibly impair that contract.  Accordingly, I would affirm the judgment reducing the husband's spousal support in light of Code § 20-109(A).