COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
          Bray, Annunziata, Bumgardner, Frank, Humphreys, Clements
          and Agee
Argued at Richmond, Virginia


JAMES VAN SHOAF, JR.
                                       MEMORANDUM OPINION[*] BY
v.   Record No. 2010-99-2            JUDGE JERE M. H. WILLIS, JR.
                                             JULY 24, 2001
JOYCE HOBSON SHOAF


                   UPON A REHEARING EN BANC

          FROM THE CIRCUIT COURT OF HENRICO COUNTY
                  Catherine C. Hammond, Judge

          Anton J. Stelly (Thompson, Smithers, Newman,
          Wade & Childress, L.L.P., on briefs), for
          appellant.

          Deborah S. O'Toole (Frank N. Cowan; Ishneila
          Ingalls Gubb; Cowan & Owen, P.C., on brief),
          for appellee.


     In an unpublished opinion, a divided panel of this Court

affirmed the judgment of the trial court, holding that the

provisions of Code § 20-109(A) did not apply to this case.  See

Shoaf v. Shoaf, No. 2010-99-2 (Va. Ct. App. August 29, 2000).  We

stayed the mandate of that decision and granted rehearing en banc.

Upon rehearing en banc, we vacate the mandate of the panel

decision and withdraw that opinion, and affirm the judgment of the

trial court.
_____
     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

Prior to the entry of their final divorce decree in 1974, the Shoafs entered into a property settlement agreement. The agreement, which was incorporated into the final decree, provided, in relevant part:

> The parties agree that the Husband shall pay to the Wife the sum of NINETY AND NO/100 ($90.00) DOLLARS per week alimony, until such time as the WIFE shall remarry.

In March 1999, Mr. Shoaf moved to modify or terminate Ms. Shoaf's spousal support pursuant to Code § 20-109(A), asserting that for more than one year after July 1, 1997, she had habitually cohabited with another person in a relationship analogous to a marriage. Ms. Shoaf admitted cohabiting in such a relationship. The trial court denied the motion, holding that the parties' property settlement agreement imposed a contractual obligation that was not subject to modification by subsequent statutory amendment. We affirm that holding.

In 1997, the General Assembly modified Code § 20-109(A) to include the following language:

> Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court may decrease or terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the

-

              evidence that termination of such support
              would constitute a manifest injustice.

See 1997 Va. Acts, ch. 241.[1]

     This case is controlled by our decision in Rubio v. Rubio,
this day decided, ___ Va. App. ___, ___ S.E.2d ___ (2001) (en
banc).  The trial court found that the parties' property
settlement agreement imposed an ongoing contractual obligation.
The record supports that finding.  Thus, the trial court did not
err in holding that this case falls within one of the exceptions
set forth in the statute and its refusal to abate Mr. Shoaf's
spousal support obligation.

     The judgment of the trial court is affirmed.

                                                  Affirmed.

---

     [1] In 2000, the legislature by amendment substituted "shall"
for "may decrease or" and substituted "unconscionable" for
"constitute a manifest injustice" in subsection (A) of Code
§ 20-109.  See 2000 Va. Acts, ch. 218.

-

Benton, J., dissenting.

When the husband filed his petition to terminate or decrease spousal support on the ground that his former wife was cohabiting with a man, Code § 20-109(A) read, in pertinent part, as follows:

> Upon order of the Court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court may decrease or terminate spousal support and maintenance unless (1) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would constitute a manifest injustice.

That statute complimented the portion of Code § 20-109.1 that provided: "Upon the death or remarriage of the spouse receiving support, spousal support shall terminate unless otherwise provided by stipulation or contract."

In Langley v. Johnson, 27 Va. App. 365, 499 S.E.2d 15 (1998); MacNelly v. MacNelly, 17 Va. App. 427, 437 S.E.2d 582 (1993); Radford v. Radford, 16 Va. App. 812, 433 S.E.2d 35 (1993), and Miller v. Hawkins, 14 Va. App. 192, 415 S.E.2d 861 (1992), we held that the public policy declared by Code §§ 20-109 and 20-109.1 is that spousal support does not survive the terminating events specified in those statutes unless the parties' agreement contained express language that spousal support will continue beyond the terminating event. It is

-

undisputed that the agreement in this case does not expressly provide for the continuation of spousal support to the former wife even if she "has been habitually cohabiting with another person in a relationship analogous to a marriage." Code § 20-109(A). Applying the logic of those cases, I would hold that the trial judge erred in ruling that spousal support could not be reduced or eliminated because of the wife's cohabitation.

"In Virginia, divorce is a creature of statutes enacted in clear, detailed language." Milligan v. Milligan, 12 Va. App. 982, 987, 407 S.E.2d 702, 704 (1991). By well established case law, the incidents related to the creation and dissolution of marriage are "a social relation subject to the State's police power." Loving v. Virginia, 388 U.S. 1, 7 (1967) (citing Maynard v. Hill, 125 U.S. 190 (1888)). It is the marital relationship that gives rise to a claim for spousal support. Thus, to the extent the General Assembly has enacted legislation that determines when spousal support may be terminated, see Code §§ 20-109 and 20-109.1, it is acting within the state's police powers to provide for the comfort and general welfare of its citizens.

Addressing the interrelationships between the impairment of contracts and the police power of a state, the Supreme Court has ruled as follows:

> "The contract clauses of the Federal
> Constitution and the Virginia Bill of Rights
> protect against the same fundamental

-

invasion of rights."  1 A. Howard, Commentaries on the Constitution of Virginia 203 (1974).  The General Assembly "shall not pass any law impairing the obligation of contracts."  Va. Const. art. I, § 11.  See U.S. Const. art I, § 10 ("No State shall . . . pass any . . . Law impairing the Obligation of Contracts.")  The Virginia contract clause has been interpreted by this Court in a manner similar to the treatment of the federal clause by the United States Supreme Court.  A. Howard at 207.

Even though the language of the contract clause is unambiguous and appears absolute, it is not "the Draconian provision that its words might seem to imply."  Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 240 (1978).  The proscription against enacting statutes that impair the obligation of contracts does not prevent the State from exercising power that is vested in it for the common good, even though contracts previously formed may be affected thereby. "'This power, which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the lives, health, morals, comfort and general welfare of the people, and is paramount to any rights under contracts between individuals.'"  Id. at 241 (quoting Manigault v. Springs, 199 U.S. 473, 480 (1905)).  The contract clause "does not operate to obliterate the [State's] police power."  438 U.S. at 241.  And, as Mr. Justice Holmes wrote in Hudson County Water Co. v. McCarter, 209 U.S. 349, 357 (1908): "One whose rights . . . are subject to state restrictions, cannot remove them from the power of the State by making a contract about them."

Working Waterman's Ass'n v. Seafood Harvesters, Inc., 227 Va. 101, 109-10, 314 S.E.2d 159, 163-64 (1984).

With regard to private contracts, the United States Supreme Court has held that the contract clause only requires that

-

"[l]egislation adjusting the rights and responsibilities of contracting parties must be upon reasonable conditions and of a character appropriate to the public purpose justifying its adoption."  United States Trust Co. v. New Jersey, 431 U.S. 1, 22 (1977).  Thus, when state statutes act to impair private contracts, the Supreme Court has "repeatedly held that unless the State is itself a contracting party, courts should '"properly defer to legislative judgment as to the necessity and reasonableness of a particular measure."'"  Keystone Bituminous Coal Assn. v. DeBenedictis, 480 U.S. 470, 505 (1987) (citations omitted).  I presume from the discussion in Working Waterman's Ass'n, that the Virginia contract clause is to be interpreted "in a manner similar to the treatment of the federal clause." 227 Va. at 109, 314 S.E.2d at 163.

I would hold, therefore, that the legislative amendment operates to allow the termination or reduction of spousal support in this case.  When adopting Code § 20-109(A), the legislature clearly made a public policy choice and made it upon a reasonable condition.  In so doing, the legislature made a concession to the contractual rights of the parties by providing an exemption for those instances in which the parties by their contract expressly provided otherwise.  Here, we are called upon to apply a law to a matter on which the contract is silent.

Moreover, the statute specifically addresses the applicable date for the legislation by reference to conduct that occurs

-

"one year or more commencing on or after July 1, 1997." Code § 20-109(A). By this specific reference, the legislature expressed its clear intention. The following language from one of our precedents is instructive:

> [It is] apparent from the language of the statute, as well as the necessary consequences of the act, that it applies to cases filed after the effective date of the statute, regardless of when the cause of action arose. To hold otherwise would require courts a generation from now to apply outmoded principles of law. Indeed, we would postpone solving for some time the very inequity the legislature sought to remedy. Disputes would arise over when the grounds for divorce occurred and which support and property laws applied. The legislature could not have intended that result.

Booth v. Booth, 7 Va. App. 22, 26, 371 S.E.2d 569, 572 (1988).

Because our decision in Hering v. Hering, 33 Va. App. 368, 533 S.E.2d 631 (2000), is contrary to the principle decided in Working Waterman's Ass'n, and, indeed, fails to reference that decision or to discuss that decision's ruling regarding the legislature's power to impair contractual obligations, I would hold that Hering was wrongly decided.

For these reasons, I would hold that Code § 20-109(A) applies to the contract at issue in this case and does not impermissibly impair that contract. Accordingly, I would reverse the judgment refusing to reduce or eliminate the husband's spousal support in light of Code § 20-109(A) and remand for reconsideration.

-