ANNUNZIATA, J.,
with whom CLEMENTS, and FELTON, JJ., join, dissenting.
I respectfully dissent from the majority’s decision. I would find the parties’ PSA expressly states that spousal support does not terminate upon wife’s remarriage and that the statutory requirements of Code § 20-109(D) have been met.
Code § 20-109(D) provides that spousal support terminates upon the death of either party or the remarriage of the spouse *671 receiving support “unless otherwise provided by stipulation or contract.” Contrary to the majority’s reasoning, I do not believe this Court’s prior decisions require that the parties’ stipulation or contract contain particular language to avoid the application of the statute’s termination provision.
The majority relies on the holdings in Radford v. Radford, 16 Va.App. 812, 433 S.E.2d 35 (1993), MacNelly v. MacNelly, 17 Va.App. 427, 437 S.E.2d 582 (1993), Gayler v. Gayler, 20 Va.App. 83, 455 S.E.2d 278 (1995), and Langley v. Johnson, 27 Va.App. 365, 499 S.E.2d 15 (1998), to affirm the trial court’s ruling that husband’s support obligation to wife terminated upon her remarriage. In these decisions, we construed Code § 20-109(D) and found that, to avoid application of the statute’s termination provision, the parties must include “express” language in the agreement, evincing their intent that the support obligation survive the payee spouse’s remarriage.
In Radford, the parties agreed in writing that “the husband shall pay unto the wife the sum of $200.00 per month for a period of 5 years.” Wife remarried before the expiration of the 5-year period referenced in the agreement, and the trial court terminated husband’s obligation to pay support, relying on Code § 20-109. On appeal, we stated:
Because ... the agreement contained no express provision for continuation upon the death or remarriage of the spouse receiving support, the spousal support terminated upon the wife’s remarriage.
Radford, 16 Va.App. at 813-14, 433 S.E.2d at 36.
Shortly thereafter, we applied the Radford holding in Mac-Nelly, where the parties agreed husband would pay wife $7,000 per month in support, but “[i]n the event that the husband or wife dies before February 1, 1996, then the obligation for support ... shall cease.” The agreement did not address the effect of wife’s remarriage on husband’s obligation. When wife remarried, husband ceased paying support. Wife argued that the inclusion of a provision concerning termination of the obligation upon the death of either party, coupled with the absence of any reference to the effect *672 of remarriage on spousal support, evinced the parties’ intent to avoid application of the Code. We disagreed and held, “in order to accomplish the stated objective of the statute to resolve ambiguity ... any attempt to abrogate the effect of the statute requires express language either citing the statute or expressly stating that remarriage does not terminate the obligation.” MacNelly, 17 Va.App. at 430, 437 S.E.2d at 584.
In Gayler, the parties’ original agreement provided that support would terminate upon the death of either party or the remarriage of the wife. The parties later executed an addendum stating that support would terminate “only upon the wife’s death.” Gayler, 20 Va.App. at 85, 455 S.E.2d at 279. We held that “the addendum’s excision of the reference to remarriage and the addition of the word ‘only,’ to the phrase, ‘upon [her] death,’ evinces the parties’ intent that spousal support would survive remarriage.” Id. at 86, 455 S.E.2d at 280.
In Langley, the parties executed a settlement agreement that provided for the husband to pay wife weekly spousal support “until her death.” When wife remarried, husband sought to have his support obligation terminated pursuant to Code § 20-109(D). We held that the phrase “until her death” does not constitute “express language” stating that the parties intended that husband’s support obligation would survive remarriage. Langley, 27 Va.App. at 370, 499 S.E.2d at 17.
I acknowledge that the holdings in Radford, MacNelly, Gayler and Langley support the principle that, where an agreement does not expressly address the duration of -spousal support in the event of remarriage, we will not read such language into the agreement by implication. Indeed, the language employed by the parties in each of these cases was ambiguous and susceptible to more than one interpretation and amply supports the result.[3] I also acknowledge that the *673 rule requiring express language is well settled and salutary, existing “if for no other reason than ... it encourages the considered judgment inherent in clarity and certainty.” Bird v. Henke, 65 Wash.2d 79, 395 P.2d 751, 753 (1964). However, none of this Court’s decisions holds that the rule can only be served if the parties use particular contract language.
A review of the authorities on which this Court relied in Miller v. Hawkins, 14 Va.App. 192, 415 S.E.2d 861 (1992), the progenitor of the MacNelly line of cases, is instructive. In Miller, we first construed Code § 20-109(D) and held that a property settlement provision must contain clear and express language evincing the parties’ intent that spousal support will continue after remarriage, to rebut the statutory presumption that it ends with that event. Miller, 14 Va.App. at 196-97, 415 S.E.2d at 864. In resolving the issue, we adopted the views expressed by appellate courts in sister states. See, e.g., Edwards v. Benefield, 260 Ga. 238, 392 S.E.2d 1, 3 (1990) (finding that a provision requiring that husband pay alimony to wife “permanently” was ambiguous in the context of other language in the agreement); In re Marriage of Williams, 115 Wash.2d 202, 796 P.2d 421, 425 (1990) (finding that a provision providing that spousal support is to be paid until wife completes bachelor’s degree or until 4 years pass, whichever comes first, does not overcome the statutory presumption); Peterson v. Lobeck, 421 N.W.2d 367, 368 (Minn.Ct.App.1988) (holding that language in the agreement obligating husband to pay spousal support for 48 months or until wife completed her bachelor’s degree was insufficient because it did not clearly state that support was to continue after remarriage); Greene v. Kunkel, 729 S.W.2d 34, 35-36 (Mo.Ct.App.1987) (finding that language requiring husband to pay support for a specific period is not sufficient to express intent that support continue upon remarriage in the specified period); In re Marriage of Glasser, 181 Cal.App.3d 149, 226 Cal.Rptr. 229, 231 (1986) (holding that agreement providing that spousal support shall be “non-modifiable” for any reason whatsoever will not be construed to mean “nonterminable” for any reason whatsoever; the terms are not synonymous and are insufficient to *674 overcome statutory presumption that support terminates upon remarriage).
In only one of the foregoing cases, Williams, did the appellate court specifically hold that the word, “remarriage,” must be used to overcome the statute and that, absent the inclusion of the word “remarriage,” an agreement clearly and unmistakably addressing the effect of remarriage on spousal support, can never pass muster. Williams, 796 P.2d at 425.
Given the absence of such a requirement in all but one of the cases whose holdings we adopted in Miller, the absence of such a requirement in the Miller opinion is significant. Miller formulated the principle as one requiring clear and express language and did not specify particular language that it deemed sufficient. Even more instructive is this Court’s continuing silence on the issue. None of the decisions that follow Miller holds that a specific reference to “remarriage” is the sole drafting technique that will be deemed sufficient to clearly express the parties’ intent with respect to the effect of remarriage on spousal support. All that is required under these precedents is that the parties’ agreement be “express” and free from “ambiguity.” MacNelly, 17 Va.App. at 430, 437 S.E.2d at 584.
Black’s Law Dictionary defines “express” as “clear,” “definite,” “plain,” “explicit,” “direct,” “unmistakable.” Black’s Law Dictionary 580 (6th ed.1990). “Express” is defined in Webster’s Dictionary as “definite,” “directly and distinctly stated ... not dubious or ambiguous.” Webster’s 3d New International Dictionary 2321 (3d ed.1993). None of the definitional synonyms leads ineluctably to the conclusion that only certain terms or words can be deemed “express” expressions of intent. See also Sussex Comty. Servs. Ass’n v. Va. Soc’y for Mentally Retarded Children, 251 Va. 240, 243, 467 S.E.2d 468, 469 (1996); Rubin v. Gochrach, 186 Va. 786, 797, 44 S.E.2d 1, 5-6 (1947); Cox v. Cox, 16 Va.App. 146, 148, 428 S.E.2d 515, 516 (1993). Indeed, such a restricted reading of the statutory requirements of Code § 20-109(D) would be wholly inconsistent with the historic role and authority of the *675 court to interpret contracts and to apply settled principles to determine intent.
“Property settlement agreements are contracts; therefore, we ... apply the same rules of interpretation applicable to contracts generally.” Tiffany v. Tiffany, 1 Va.App. 11, 15, 332 S.E.2d 796, 799 (1985). Where parties contract lawfully and their contract is free from ambiguity or doubt, their agreement furnishes the law which governs them and “equity will refuse to give it another by interpretation.” Elam v. Ford, 145 Va. 536, 544, 134 S.E. 670, 672 (1926). Where an agreement is plain and unambiguous in its terms, the court is duty bound to give it full force and effect. See generally Bridgestone/Firestone, Inc. v. Prince William Sq. Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995) (citing Foods First, Inc. v. Gables Assocs., 244 Va. 180, 182, 418 S.E.2d 888, 889 (1992)); Burns v. Eby & Walker, Inc., 226 Va. 218, 221, 308 S.E.2d 114, 116 (1983).
Furthermore, the General Assembly has not evinced an intent to require divorcing parties to use particular language to meet the definition of “express” and to avoid the application of Code § 20-109(D).[4] And, to the extent that our prior decisions are read as requiring the parties to use the specific term “remarriage” in order to avoid the termination provision of Code § 20-109(D), I would reverse based on the ground that the decisions do not properly reflect the legislature’s intent. See Code § 17.1-402(D) (“The Court sitting en banc shall consider and decide the case and may overrule any previous decision by any panel or of the full Court.”).
The legislature has furthermore evinced no intent to foreclose the judicial application of contract principles to determine the intent of the parties with respect to the duration of *676 spousal support in the event of remarriage.[5] The statute requires nothing more than a “stipulation” or a “contract.” In short, neither the statute nor our prior holdings forecloses construing a contract provision as “express,” pursuant to well established rules, simply because certain words are not used in the formulation.
I believe the majority opinion contravenes the duty placed upon the court to interpret contracts so that the intentions of the parties are given full effect. See Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (finding that the polestar for the construction of a contract is the intent of the contracting parties as expressed by them in the words they have used). The majority reaches its decision on the ground that our prior decisions do not permit any other interpretation when the property settlement agreement fails to “expressly” use the word, “remarriage,” in the provisions addressing the duration of support under such circumstances. In adopting this approach, the majority improperly “read[s] into contracts language which ... add[s] to or take[s] away from the meaning of the words already contain[ed] therein.” Great Falls Hdwe. Co. v. South Lakes Village Center Assocs., 238 Va. 123, 126, 380 S.E.2d 642, 644 (1989) (quoting Wilson, 227 Va. at 187, 313 S.E.2d at 398). The majority relies, in part, on a footnote in our decision in Gayler to support its conclusion. In Gayler, as noted earlier, we found the parties intended that spousal support continue in the event of remarriage based on *677 a merged reading of the parties’ property settlement agreement and its addendum. 20 Va.App. at 86, 455 S.E.2d at 280. We stated in a footnote, however:
The use of the term “only” [as in the phrase “only upon the death of the wife”] by the parties is alone not determinative of the issue. Absent the reference to the effect of remarriage in the original agreement, the language of the addendum standing alone would not be sufficient to evince an intent of the parties to avoid Code §§ 20-109 and 20-109.1.
Id. at 86 n. 2, 455 S.E.2d at 280 n. 2.
The majority reasons that the terms of the Hardesty agreement, stating spousal support “cannot be terminated for any reason,” are “very similar” to the language in Gayler and that, consistent with Gayler, the decision of the trial court must be affirmed. It is apparent that the meaning of the term “only” in the Gayler footnote differs in no material respect from the meaning of the terms used in the property settlement agreement before us, which states that support would not terminate for “any reason.” While it is arguable that the word “only” and the phrase “for any reason” produce a semantically indistinguishable result, the semantic analysis is not determinative. The Gayler footnote does not construe or adopt a definition of the term, “only,” in the abstract; rather, it construes the term in the context of the contract provision hypothesized in the footnote, viz., spousal support is to terminate “only upon death.” The Gayler observation that such a formulation is sufficient to overcome the effect of Code § 20-109(D) is not unexpected. As framed in footnote two, the contract provision deemed insufficient is the very same provision we found inadequate in MacNelly. However, the restatement of the MacNelly principle in the Gayler footnote does not, in itself, establish the rule that the parties must use the term, “remarriage,” to signal their contemplation of the circumstance.
Furthermore, to the extent the treatment of the word, “only,” in Gayler footnote two was intended to address its use in other contexts, or to extend to the treatment of any synonymous terms such as those in the present matter, those *678 questions were not before us in Gayler. The meaning of such terms was not necessary for the resolution of the case and constitutes dicta.[6] It is therefore not binding upon us in addressing whether an agreement in which the parties fail to explicitly use the word, “remarriage,” but are otherwise clear and unmistakable about their intent that spousal support continue, cannot be construed to reflect that intent.[7] To the extent the majority extrapolates from the Gayler footnote the “holding” that the divorcing parties are required to use, as a matter of law and -without exception, the term, “remarriage,” to overcome the reach of the statute, the “holding” is likewise dicta and not binding upon us.[8]
Applying contract principles to the case at bar, I would find the parties intended that spousal support not terminate upon the wife’s remarriage. Section 15(d) of the Hardestys’ PSA states, “This support cannot be terminated for any reason.” *679 The use of the word “any” encompasses all possible reasons and circumstances which might require termination of the support obligation. To state that the support obligation would not terminate for “any” reason is no different than stating there is no reason whatsoever that husband’s support obligation not continue. As a matter of necessary logic, it follows that wife’s remarriage is not a reason for terminating her support in the case at bar. The parties’ intent is clear and unmistakable from its plain meaning. As such, it is express; there is nothing to infer or imply from it.
Accordingly, I would reverse the decision of the trial court.

. For example, the phrases "for a period of 5 years,” "in the event wife dies,” and "until her death” are each open to more than one reading, thus, we are unable to determine the parties’ intentions regarding termination of support.

. When the legislature requires specific language be used, it generally states that requirement in the Code. See, e.g., Code § 8.2-316(2) (requiring disclaimers of an implied warranty of merchantability to "mention” the word "merchantability”); Code § 8.01-433.1 (requiring contracts authorizing confession of judgment to include specific statutory verbiage).

. The legislature has amended Code § 20-109(D) twice since our decision in Miller. As the majority points out, it has not changed this Court’s long-standing interpretation of the statute, requiring precise and express language to overcome the operation of § 20-109(D). However, although the legislature is presumed to thus " ‘acquiesce’ ” in the interpretation, McFadden v. Commonwealth, 3 Va.App. 226, 230, 348 S.E.2d 847, 849 (1986) (quoting Burns v. Bd. of Supervisors, 227 Va. 354, 360, 315 S.E.2d 856, 860 (1984)), it cannot be presumed that they acquiesced in the dicta of the Gayler footnote or in subsequent holdings that rely on the dicta, including Langley. See Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 299, 115 S.Ct. 2144, 2149, 132 L.Ed.2d 226 (1995). Nor can it be presumed to acquiesce in a requirement that the parties must use the word, "remarriage,” in a provision regarding its effect on spousal support to overcome the statutory presumption when none of our holdings stand squarely for that proposition.

. Black's Law Dictionary defines dicta as: "Opinions of a judge which do not embody the resolution or determination of the specific case before the courts. Expressions in court’s opinion which go beyond the facts before court and therefore are the individual views of author of opinion and not binding in subsequent cases as precedent.” Black’s, supra, at 454.

. In our subsequent decision in Langley, we cited to Gayler to reiterate the principle that the phrase "only upon death” is insufficient language to avoid termination of the support obligation pursuant to Code § 20-109(D). Although both Gayler and Langley reiterate the holding we reached in MacNelly, neither decision stands for the proposition that, in all contexts, the term “remarriage” must be employed by the parties.

. In Gayler, the Court was called upon to construe an agreement to determine the parties' intent. In that context, the excision by addendum of the term, “remarriage,” from the agreement provision providing for the termination of support "upon the death or remarriage of the wife,” was significant and, in accordance with the general principles of contract language construction, we held that the parties had contemplated the effect of "remarriage” on spousal support and intended that it continue. In our subsequent decision in Langley, we cited to Gayler footnote two to reiterate the principle that the phrase "only upon death” is insufficient language to avoid termination of the support obligation pursuant to Code § 20-109(D), a principle first established in MacNelly. Although both Gayler and Langley reiterate the holding we reached in MacNelly, neither decision stands for the proposition that, in all contexts, the term "remarriage” must be employed by the parties.