570 S.E.2d 878

Francesca HARDESTY,

v.

Samuel HARDESTY.

Record No. 0366–02–2.

Court of Appeals of Virginia,
Richmond.

Oct. 22, 2002.

John N. Clifford (Clifford & Duke, P.C., on brief), Rich-mond, for appellant.

Frank N. Cowan (Ishneila I.G. Moore; Cowan & Owen, P.C., on brief), Richmond, for appellee.

Present: HUMPHREYS, CLEMENTS and AGEE, JJ.

HUMPHREYS, Judge.

Francesca Hardesty (wife) appeals a judgment of the trial court declaring that pursuant to the parties' final decree of divorce, Samuel Hardesty's (husband's) obligation to pay spousal support must terminate upon wife's remarriage. We affirm the judgment of the trial court.

Husband and wife were married on October 5, 1990. The parties separated on June 22, 1999. No children were born of the marriage, but the parties had accumulated a substantial amount of assets, including a contracting business. On July 26, 1999, wife filed a bill of complaint seeking a divorce on the grounds of adultery, cruelty and separation. Husband filed a cross-bill seeking a divorce on the grounds of separation.

The parties participated in mediation on January 13, 2000, and entered into a written property settlement agreement (PSA) as a result. The PSA provided for the division of the parties' assets. The PSA also provided the following as to spousal support, in relevant part:

15. *Spousal Support.* Husband and Wife agree that Husband has an obligation to pay Wife spousal support as follows:

a. Beginning February 1, 2000 and continuing through to and including the final payment on January 1, 2007, Husband shall pay $5,000.00 per month.

\* \* \* \* \* \*

d. This support cannot be terminated for any reason.

In addition, the PSA provided as follows, in pertinent part, concerning the parties' tax obligations:

13. *Tax Consequences.*

\* \* \* \* \* \*

c. Husband shall fund an escrow account with $300,000.00 [$150,000.00 of this shall be considered Wife's funds] on or before May 15, 2000 ... to be held in an interest bearing account. These funds shall be held for payment of the taxes, penalties, interest, and fines, for Hardesty Construction, Inc. and American Gutter through 1998. If any monies are left over after all taxes, penalties, interest, and fines are paid in full, the balance shall be equally distributed to each party.... If taxes, penalties, interest, and fines are owed after the depletion of all monies for payment of the taxes, penalties, interest and fines, personal, Hardesty Construction, Inc. and American Gutter through 1998, then each party shall be equally liable for the balance. Upon depletion of the escrow balance, Husband shall immediately pay the entire balance for any taxes, penalties, interest, and fines owed within six [6] months, time being of the essence. Thereafter, he may deduct [right of set off] Wife's half from the spousal support by shortening support by the number of months necessary to repay the amount to Husband. For example, if $10,000.00 is owed after the escrow is depleted, Husband shall pay said amount in full and shorten support by one month [$5,000.00] at the end of the support period....

Finally, the PSA provided that it would be "affirm[ed], ratif[ied] and incorporate[d]," but not "merge[d]," into the final divorce decree.

Prior to the court's entry of the final decree, wife filed a separate action with the trial court in July of 2001, seeking a declaratory judgment holding the PSA precluded the termination of spousal support upon her remarriage. Husband demurred to the declaratory judgment action contending that the language contained in the PSA was insufficient as a matter of law to bar termination of spousal support upon remarriage. By order entered July 20, 2001, the action was consolidated with the parties' pending divorce action.

After reviewing supporting memoranda filed by the parties, and hearing oral argument on November 30, 2001, in a Decem-

ber 6, 2001 telephone conference, the trial court advised counsel as follows:

> After considering the authorities, I have decided to sustain the demurrer or motion to suppress of the defendant. The Court finds that, under applicable case law, it is required, in order of [sic] the spousal support to survive remarriage, that the property settlement explicitly state that it will survive remarriage.

> And I will note [wife's] exception but will hold that spousal support will terminate upon the remarriage of [wife].

The trial court incorporated its finding in this regard into the final decree of divorce, entered February 4, 2002, stating:

> the Court treats the demurrer as a dispositive motion and enters the following declaratory judgment: if the plaintiff remarries the defendant is relieved from any further obligation to pay spousal support to the Plaintiff. The [PSA] does not contain "express language either citing the statute [Va.Code § 20–109] or expressly stating that remarriage does not terminate the obligation" as required by Virginia law. *MacNelly v. MacNelly*, 17 Va.App. 427, 430, 437 S.E.2d 582, 584 (1993) and *Langley v. Johnson*, 27 Va.App. 365, 499 S.E.2d 15 (1998). Accordingly, declaratory judgment in favor of the defendant is entered as set forth herein.

Wife appeals only this portion of the trial court's ruling.

Code § 20–109(D) provides that "[u]nless otherwise provided by stipulation or contract, spousal support and maintenance shall terminate upon the death of either party or remarriage of the spouse receiving support." Code § 20–109. We have held that the " 'language [of Code § 20–109] contemplates an expressed, not implied, provision that support shall not terminate upon death or remarriage. By resolving ambiguity, Code § 20–109 reduces litigation. To permit its mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose . . . .' " *MacNelly*, 17 Va.App. at 429–30, 437 S.E.2d at 584 (quoting

*Radford v. Radford*, 16 Va.App. 812, 813, 433 S.E.2d 35, 36 (1993)).

We have further held that "in order to accomplish the stated objective of the statute to resolve ambiguity and thereby reduce litigation, any attempt to abrogate the effect of the statute requires express language either citing the statute or expressly stating that remarriage does not terminate the obligation." *Id.* at 430, 437 S.E.2d at 584. " 'The public policy clearly declared by Code §§ 20–109 and 20–109.1 is that spousal support does not survive the recipient's remarriage. To create an exception to that policy, the agreement must be equally clear.' " *Langley*, 27 Va.App. at 371–72, 499 S.E.2d at 18 (quoting *Miller v. Hawkins*, 14 Va.App. 192, 195–97, 415 S.E.2d 861, 863–64 (1992)).

In *Gayler v. Gayler*, 20 Va.App. 83, 85, 455 S.E.2d 278, 279 (1995), the agreement provided that "the payments [of spousal support] . . . shall terminate upon the Wife's remarriage or death." However, the agreement was later modified by an addendum stating that "the payments . . . shall terminate only upon the Wife's death." 20 Va.App. at 85, 455 S.E.2d at 279. There, we held "that the addendum's excision of the reference to remarriage and the addition of the word 'only' evince[d] the parties' intent that spousal support would survive wife's re-marriage." *Id.* at 86, 455 S.E.2d at 280. Nevertheless, in a footnote to that holding, we made an important distinction, stating:

> The use of the term "only" by the parties is alone not determinative of the issue. Absent the reference to the effect of remarriage in the original agreement, the language of the addendum standing alone would not be sufficient to evince an intent of the parties to avoid the operation of Code §§ 20–109 and 20–109.1.

*Id.* at 86 n. 2, 455 S.E.2d at 280 n. 2; *see also Langley*, 27 Va.App. at 373–74, 499 S.E.2d at 19.

In the agreement that we review in this appeal, the terms provide that spousal support "cannot be terminated for any reason." However, no language in any part of the PSA

explicitly evinces the parties' intent to avoid operation of the statute as to remarriage. Indeed, the language of the parties' agreement is very similar to "the language of the [Gayler] addendum standing alone [which] would not be sufficient to evince an intent of the parties to avoid the operation of Code §§ 20–109 and 20–109.1." *Gayler,* 20 Va.App. at 86 n. 2, 455 S.E.2d at 280 n. 2.

Thus, although on its face the language of the PSA seems to clearly reflect the intent of the parties, we reiterate our stated rationale in *Radford,* that the statutory "language contemplates an expressed, not implied, provision that support shall not terminate upon death or remarriage" and that "[t]o permit its mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose." 16 Va.App. at 813, 433 S.E.2d at 36. Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*

AGEE, J., concurring.

For the following reasons, I concur in the result reached in the majority opinion.

In our previous decisions in *Gayler v. Gayler,* 20 Va.App. 83, 86 n. 2, 455 S.E.2d 278, 280 n. 2 (1995), and *MacNelly v. MacNelly,* 17 Va.App. 427, 430, 437 S.E.2d 582, 584 (1993), we have extrapolated the phrase "unless otherwise provided" in Code § 20–109(D) to apparently require explicitly stating the words "remarriage" or "death" in a property settlement agreement in order to overcome the statutory presumption that spousal support payments terminate upon the death of a spouse or the payee spouse's remarriage. By inference, our decisions forbid any other language, no matter how clear or express, from rebutting the statutory presumption unless the specific words "remarriage" or "death" appear in the operative contract provision.

In the case at bar, since § 15(d) of the property settlement agreement did not include the word "remarriage," our precedent appears to mandate a decision that the statutory pre-

sumption of Code § 20–109(D) is not overcome, regardless of how clear and unmistakable the meaning of that section may appear to a reader of the English language.

In *Johnson v. Commonwealth,* 252 Va. 425, 430, 478 S.E.2d 539, 541 (1996), the Supreme Court stated, "[W]e hold that a decision of a panel of the Court of Appeals becomes a predicate for application of the doctrine of *stare decisis* until overruled by a decision of the Court of Appeals sitting *en banc* or by a decision of this Court." Accordingly, bound by the doctrine of *stare decisis,* I concur in the result.