COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton, Elder,
         Annunziata, Bumgardner, Frank, Humphreys, Clements,
         Agee,* Felton and Kelsey
Argued at Richmond, Virginia


FRANCESCA HARDESTY
                                              OPINION BY
v.   Record No. 0366-02-2         JUDGE ROBERT J. HUMPHREYS
                                              MAY 27, 2003
SAMUEL HARDESTY

                UPON A REHEARING EN BANC

        FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                   Michael C. Allen, Judge

        John N. Clifford (Clifford & Duke, P.C., on
        brief), for appellant.

        Frank N. Cowan (Ishneila I.G. Moore; Cowan &
        Owen, P.C., on brief), for appellee.


     This matter comes before the Court on a rehearing en banc

from a panel decision rendered October 22, 2002.  See Hardesty v.

Hardesty, 39 Va. App. 102, 570 S.E.2d 878 (2002).  The panel

affirmed a judgment of the trial court declaring that, pursuant to

the parties' final decree of divorce, Samuel Hardesty's obligation

to pay spousal support to his former wife, Francesca Hardesty,

must terminate upon her remarriage.  By order dated November 26,

2002, we granted wife's petition for a rehearing en banc, stayed

--------------------------------------------------

        * Justice Agee participated in the argument and decision of
this case prior to his investiture as a justice of the Supreme
Court of Virginia.

the mandate of that decision, and reinstated the appeal.  Upon rehearing <u>en</u> <u>banc</u>, we affirm the judgment of the trial court.

I.  Background

Husband and wife were married in 1990 and separated in 1999. No children were born of the marriage.  In 1999, wife filed a bill of complaint seeking a divorce on the grounds of adultery, cruelty and separation.  Husband filed a cross-bill seeking a divorce on the grounds of separation.

The parties participated in mediation on January 13, 2000, and entered into a written property settlement agreement (PSA) as a result.  The PSA provided for the division of the parties' assets.  The PSA also provided the following as to spousal support, in relevant part:

> 15.  <u>Spousal Support</u>.  Husband and Wife agree that Husband has an obligation to pay Wife spousal support as follows:
>
> a.  Beginning February 1, 2000 and continuing through to and including the final payment on January 1, 2007, Husband shall pay $5,000.00 per month.
>
> *     *     *     *     *     *     *
>
> d.  This support cannot be terminated for any reason.

In addition, the PSA provided as follows, in pertinent part, concerning the parties' tax obligations:

> 13.  Tax Consequences.
>
> *     *     *     *     *     *     *

- 2 -

c. Husband shall fund an escrow account with $300,000.00 [$150,000.00 of this shall be considered Wife's funds] on or before May 15, 2000 . . . to be held in an interest bearing account. These funds shall be held for payment of the taxes, penalties, interest, and fines, for Hardesty Construction, Inc. and American Gutter through 1998. If any monies are left over after all taxes, penalties, interest, and fines are paid in full, the balance shall be equally distributed to each party. . . . If taxes, penalties, interest, and fines are owed after the depletion of all monies for payment of the taxes, penalties, interest and fines, personal, Hardesty Construction, Inc. and American Gutter through 1998, then each party shall be equally liable for the balance. Upon depletion of the escrow balance, Husband shall immediately pay the entire balance for any taxes, penalties, interest, and fines owed within six [6] months, time being of the essence. Thereafter, he may deduct [right of set off] Wife's half from the spousal support by shortening support by the number of months necessary to repay the amount to Husband. For example, if $10,000.00 is owed after the escrow is depleted, Husband shall pay said amount in full and shorten support by one month [$5,000.00] at the end of the support period. . . .

Finally, the PSA provided that it would be "affirm[ed], ratif[ied] and incorporate[d]," but not "merge[d]," into the final divorce decree.

Prior to the court's entry of the final decree, wife filed a separate action with the trial court in July of 2001, seeking a declaratory judgment holding the PSA precluded the termination of spousal support upon her remarriage. Husband demurred to the declaratory judgment action contending that the language contained

in the PSA was insufficient as a matter of law to bar termination of spousal support upon remarriage. By order entered July 20, 2001, the action was consolidated with the parties' pending divorce action.

After reviewing supporting memoranda filed by the parties and a hearing ore tenus, the trial court advised counsel as follows:

> After considering the authorities, I have decided to sustain the demurrer or motion to suppress of the defendant. The Court finds that, under applicable case law, it is required, in order of [sic] the spousal support to survive remarriage, that the property settlement explicitly state that it will survive remarriage.
>
> And I will note [wife's] exception but will hold that spousal support will terminate upon the remarriage of [wife].

The trial court incorporated its finding in this regard into the final decree of divorce, entered February 4, 2002, stating:

> [T]he Court treats the demurrer as a dispositive motion and enters the following declaratory judgment:
>
> [I]f the plaintiff remarries the defendant is relieved from any further obligation to pay spousal support to the Plaintiff. The [PSA] does not contain "express language either citing the statute [Va. Code § 20-109] or expressly stating that remarriage does not terminate the obligation" as required by Virginia law. MacNelly v. MacNelly, 17 Va. App. 427, 430, 437 S.E.2d 582, 584 (1993) and Langley v. Johnson, 27 Va. App. 365, 499 S.E.2d 15 (1998). Accordingly, declaratory judgment in favor of the defendant is entered as set forth herein.

Wife appeals only this portion of the trial court's ruling.

- 4 -

## II. Analysis

Code § 20-109(D) provides that "[u]nless otherwise provided by stipulation or contract, spousal support and maintenance shall terminate upon the death of either party or remarriage of the spouse receiving support." Code § 20-109. We have held that the "'language [of Code § 20-109] contemplates an expressed, not implied, provision that support shall not terminate upon death or remarriage. By resolving ambiguity, Code § 20-109 reduces litigation. To permit its mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose. . . .'" MacNelly, 17 Va. App. at 429-30, 437 S.E.2d at 584 (quoting Radford v. Radford, 16 Va. App. 812, 813, 433 S.E.2d 35, 36 (1993)).

We have further held that "in order to accomplish the stated objective of the statute to resolve ambiguity and thereby reduce litigation, any attempt to abrogate the effect of the statute requires express language either citing the statute or expressly stating that remarriage does not terminate the obligation." Id. at 430, 437 S.E.2d at 584. "'The public policy clearly declared by Code §§ 20-109 and 20-109.1 is that spousal support does not survive the recipient's remarriage. To create an exception to that policy, the agreement must be equally clear.'" Langley, 27 Va. App. at 371-72, 499 S.E.2d at 18 (quoting Miller v. Hawkins, 14 Va. App. 192, 195-97, 415 S.E.2d 861, 863-64 (1992)).

In Gayler v. Gayler, 20 Va. App. 83, 85, 455 S.E.2d 278, 279 (1995), the agreement provided that "the payments [of spousal support] . . . shall terminate upon the Wife's remarriage or death." However, the agreement was later modified by an addendum stating that "the payments . . . shall terminate only upon the Wife's death." 20 Va. App. at 85, 455 S.E.2d at 279. There, we held "that the addendum's excision of the reference to remarriage and the addition of the word 'only' evince[d] the parties' intent that spousal support would survive wife's remarriage." Id. at 86, 455 S.E.2d at 280. Nevertheless, in a footnote to that holding, we made an important distinction, stating:

> The use of the term "only" by the parties is alone not determinative of the issue. Absent the reference to the effect of remarriage in the original agreement, the language of the addendum standing alone would not be sufficient to evince an intent of the parties to avoid the operation of Code §§ 20-109 and 20-109.1.

Id. at 86 n.2, 285 S.E.2d at 280 n.2; see also Langley, 27 Va. App. at 373-74, 499 S.E.2d at 19.[1]

---

[1] Judge Annunziata's dissent argues that this footnoted language in Gayler is mere dicta. However, it is clear that the footnoted language was not dicta, but was central to the ratio decidendi of the opinion. See Black's Law Dictionary 1262 (6th ed. 1990) (defining ratio decidendi as "the ground or reason of decision"). Indeed, in reaching its determination, the court in Gayler specifically held "that the addendum's excision of the reference to remarriage and the addition of the word 'only,'" sufficiently evinced the "parties' intent that spousal support would survive wife's remarriage." Gayler, 20 Va. App. at 86, 455 S.E.2d at 280. The footnote reinforces the importance of both elements – the addendum's excision of the reference to remarriage and the word "only" – to its holding. Therefore, the

- 6 -

In the agreement that we review in this appeal, the terms provide that spousal support "cannot be terminated for any reason." However, no language in any part of the PSA explicitly evinces the parties' intent to avoid operation of the statute as to remarriage. Indeed, the language of the parties' agreement is very similar to "the language of the [Gayler] addendum [which] standing alone[,] would not be sufficient to evince an intent of the parties to avoid the operation of Code §§ 20-109 and 20-109.1." Gayler, 20 Va. App. at 86 n.2, 285 S.E.2d at 280 n.2.

Moreover, we find it significant that since our decisions in Radford and Gayler, and before the proceedings in the instant case, the legislature has met several times, amending Code § 20-109 on two of those occasions; yet, it has given no indication of a desire to change our long-standing interpretation of the statute, requiring precise and express language to overcome the operation of Code § 20-109(D). See 1998 Acts, ch. 604; 2001 Acts, chs. 725 and 740. "'[W]here the General Assembly acts in an area in which this Court has already spoken, it is presumed to know the law as the Court has stated it and to acquiesce

language was clearly crucial to the court's resolution of the dispute in that case, and thus provides us with distinct precedent to guide our decision in this case. See Langley, 27 Va. App. at 373-74, 499 S.E.2d at 19 (noting that "Gayler turned on the fact that the addendum's alteration of the original support provisions was a 'critical change in the original agreement,' which necessarily evinced in a clear and express fashion the parties' intent that the support would continue after remarriage").

therein.'"  McFadden v. Commonwealth, 3 Va. App. 226, 230, 348

S.E.2d 847, 849 (1986) (quoting Burns v. Board of Supervisors, 227

Va. 354, 360, 315 S.E.2d 856, 860 (1984)); see also Christensen v.

Christensen, 26 Va. App. 651, 656, 496 S.E.2d 132, 134 (1998).

Thus, although on its face the language of the PSA seems to clearly reflect the intent of the parties, we reiterate our stated rationale in Radford, that the statutory "language contemplates an expressed, not implied, provision that support shall not terminate upon death or remarriage" and that "[t]o permit its mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose."  16 Va. App. at 813, 433 S.E.2d at 36.[2]  Accordingly, the judgment of the trial court is affirmed.

---

[2] Judge Kelsey's dissent is founded upon the proposition that our "extrapolation[s]" in Gayler and MacNelly take "too far" "our construction of the statute."  And, although precedential, the decisions are based upon "unsettled" "piling[s] [of] dicta upon dicta."  As set forth above, we differ with this conclusion.  While he is quite correct that we clearly have the authority to overrule long-standing precedent, whether it originates from a panel of this Court or the full Court sitting en banc, his dissent omits any recognition that we do so rarely, and certainly not lightly.  The precedential value of our opinions to this Court, the lower courts and members of the bar, is well settled.  The courts of this Commonwealth have long acknowledged that "[i]n Virginia, the doctrine of stare decisis is more than a mere cliché," and is not to be taken lightly.  Nelson Selected Risks Ins. Co. v. Dean, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987).  The "doctrine plays a significant role in the orderly administration of justice by assuring consistent, predictable, and balanced application of legal principles."  Id.

Moreover, [this] "respect for precedent
helps promote public confidence in the law."

[Note, Constitutional Stare Decisis, 103 Harv. L. Rev. 1344, 1349 (1990).] If an appellate court does not respect its own precedent, then the public, the bench, and the bar are less likely to have confidence in the decisions that are made. Furthermore, employing the doctrine of stare decisis assures the public that an appellate court's judgments are not arbitrary and that the court is controlled by precedent that is binding without regard to the personal views of its members.

Newman v. Erie Insurance Exchange, 256 Va. 501, 510, 507 S.E.2d 348, 353 (1998) (Compton, J., joined by Carrico, CJ., dissenting). In keeping with the principles articulated immediately above, we recognize that our existing precedent on this issue has provided a longstanding "bright line rule" for the bar and the public, which ought not lightly be cast aside.

Annunziata, J., with whom Clements, and Felton, JJ., join, dissenting.

I respectfully dissent from the majority's decision. I would find the parties' PSA expressly states that spousal support does not terminate upon wife's remarriage and that the statutory requirements of Code § 20-109(D) have been met.

Code § 20-109(D) provides that spousal support terminates upon the death of either party or the remarriage of the spouse receiving support "unless otherwise provided by stipulation or contract." Contrary to the majority's reasoning, I do not believe this Court's prior decisions require that the parties' stipulation or contract contain particular language to avoid the application of the statute's termination provision.

The majority relies on the holdings in Radford v. Radford, 16 Va. App. 812, 433 S.E.2d 35 (1993), MacNelly v. MacNelly, 17 Va. App. 427, 437 S.E.2d 582 (1993), Gayler v. Gayler, 20 Va. App. 83, 455 S.E.2d 278 (1995), and Langley v. Johnson, 27 Va. App. 365, 499 S.E.2d 15 (1998), to affirm the trial court's ruling that husband's support obligation to wife terminated upon her remarriage. In these decisions, we construed Code § 20-109(D) and found that, to avoid application of the statute's termination provision, the parties must include "express" language in the agreement, evincing their intent that the support obligation survive the payee spouse's remarriage.

- 10 -

In Radford, the parties agreed in writing that "the husband shall pay unto the wife the sum of $200.00 per month for a period of 5 years."  Wife remarried before the expiration of the 5-year period referenced in the agreement, and the trial court terminated husband's obligation to pay support, relying on Code § 20-109.  On appeal, we stated:

> Because . . . the agreement contained no express provision for continuation upon the death or remarriage of the spouse receiving support, the spousal support terminated upon the wife's remarriage.

Radford, 16 Va. App. at 813-14, 433 S.E.2d at 36.

Shortly thereafter, we applied the Radford holding in MacNelly, where the parties agreed husband would pay wife $7,000 per month in support, but "[i]n the event that the husband or wife dies before February 1, 1996, then the obligation for support . . . shall cease."  The agreement did not address the effect of wife's remarriage on husband's obligation.  When wife remarried, husband ceased paying support.  Wife argued that the inclusion of a provision concerning termination of the obligation upon the death of either party, coupled with the absence of any reference to the effect of remarriage on spousal support, evinced the parties' intent to avoid application of the Code.  We disagreed and held, "in order to accomplish the stated objective of the statute to resolve ambiguity . . . any attempt to abrogate the effect of the statute requires express language either citing the statute or expressly stating that remarriage

- 11 -

does not terminate the obligation."  MacNelly, 17 Va. App. at 430, 437 S.E.2d at 584.

In Gayler, the parties' original agreement provided that support would terminate upon the death of either party or the remarriage of the wife.  The parties later executed an addendum stating that support would terminate "only upon the wife's death."  Gayler, 20 Va. App. at 85, 455 S.E.2d at 279.  We held that "the addendum's excision of the reference to remarriage and the addition of the word 'only,' to the phrase, 'upon [her] death,' evinces the parties' intent that spousal support would survive remarriage."  Id. at 86, 455 S.E.2d at 280.

In Langley, the parties executed a settlement agreement that provided for the husband to pay wife weekly spousal support "until her death."  When wife remarried, husband sought to have his support obligation terminated pursuant to Code § 20-109(D).  We held that the phrase "until her death" does not constitute "express language" stating that the parties intended that husband's support obligation would survive remarriage.  Langley, 27 Va. App. at 370, 499 S.E.2d at 17.

I acknowledge that the holdings in Radford, MacNelly, Gayler and Langley support the principle that, where an agreement does not expressly address the duration of spousal support in the event of remarriage, we will not read such language into the agreement by implication.  Indeed, the language employed by the parties in each of these cases was

- 12 -

ambiguous and susceptible to more than one interpretation and amply supports the result.[3]  I also acknowledge that the rule requiring express language is well settled and salutary, existing "if for no other reason than . . . it encourages the considered judgment inherent in clarity and certainty."  <u>Bird v. Henke</u>, 395 P.2d 751, 753 (Wash. 1964).  However, none of this Court's decisions holds that the rule can only be served if the parties use particular contract language.

A review of the authorities on which this Court relied in <u>Miller v. Hawkins</u>, 14 Va. App. 192, 415 S.E.2d 861 (1992), the progenitor of the <u>MacNelly</u> line of cases, is instructive.  In <u>Miller</u>, we first construed Code § 20-109(D) and held that a property settlement provision must contain clear and express language evincing the parties' intent that spousal support will continue after remarriage, to rebut the statutory presumption that it ends with that event.  <u>Miller</u>, 14 Va. App. at 196-97, 415 S.E.2d at 864.  In resolving the issue, we adopted the views expressed by appellate courts in sister states.  <u>See, e.g.</u>, <u>Edwards v. Benefield</u>, 392 S.E.2d 1, 3 (Ga. 1990) (finding that a provision requiring that husband pay alimony to wife "permanently" was ambiguous in the context of other language in the agreement); <u>In re Marriage of Williams</u>, 796 P.2d 421, 425

---

[3] For example, the phrases "for a period of 5 years," "in the event wife dies," and "until her death" are each open to more than one reading, thus, we are unable to determine the parties' intentions regarding termination of support.

(Wash. 1990) (finding that a provision providing that spousal support is to be paid until wife completes bachelor's degree or until 4 years pass, whichever comes first, does not overcome the statutory presumption); Peterson v. Lobeck, 421 N.W.2d 367, 368 (Minn. Ct. App. 1988) (holding that language in the agreement obligating husband to pay spousal support for 48 months or until wife completed her bachelor's degree was insufficient because it did not clearly state that support was to continue after remarriage); Green v. Kunkel, 729 S.W.2d 34, 35-36 (Mo. Ct. App. 1987) (finding that language requiring husband to pay support for a specific period is not sufficient to express intent that support continue upon remarriage in the specified period); In re Marriage of Glasser, 226 Cal. Rptr. 229, 231 (Cal. Ct. App. 1986) (holding that agreement providing that spousal support shall be "non-modifiable" for any reason whatsoever will not be construed to mean "nonterminable" for any reason whatsoever; the terms are not synonymous and are insufficient to overcome statutory presumption that support terminates upon remarriage).

In only one of the foregoing cases, Williams, did the appellate court specifically hold that the word, "remarriage," must be used to overcome the statute and that, absent the inclusion of the word "remarriage," an agreement clearly and unmistakably addressing the effect of remarriage on spousal support, can never pass muster. Williams, 796 P.2d at 425.

- 14 -

Given the absence of such a requirement in all but one of the cases whose holdings we adopted in Miller, the absence of such a requirement in the Miller opinion is significant. Miller formulated the principle as one requiring clear and express language and did not specify particular language that it deemed sufficient. Even more instructive is this Court's continuing silence on the issue. None of the decisions that follow Miller holds that a specific reference to "remarriage" is the sole drafting technique that will be deemed sufficient to clearly express the parties' intent with respect to the effect of remarriage on spousal support. All that is required under these precedents is that the parties' agreement be "express" and free from "ambiguity." MacNelly, 17 Va. App. at 430, 437 S.E.2d at 584.

Black's Law Dictionary defines "express" as "clear," "definite," "plain," "explicit," "direct," "unmistakable." Black's Law Dictionary 580 (6th ed. 1990). "Express" is defined in Webster's Dictionary as "definite," "directly and distinctly stated . . . not dubious or ambiguous." Webster's 3d New International Dictionary 2321 (3d ed. 1993). None of the definitional synonyms leads ineluctably to the conclusion that only certain terms or words can be deemed "express" expressions of intent. See also Sussex Comty. Servs. Ass'n v. Va. Soc'y for Mentally Retarded Children, 251 Va. 240, 243, 467 S.E.2d 468, 469 (1996); Rubin v. Gochrach, 186 Va. 786, 797, 44 S.E.2d 1,

- 15 -

5-6 (1947); Cox v. Cox, 16 Va. App. 146, 148, 428 S.E.2d 515, 516 (1993). Indeed, such a restricted reading of the statutory requirements of Code § 20-109(D) would be wholly inconsistent with the historic role and authority of the court to interpret contracts and to apply settled principles to determine intent.

"Property settlement agreements are contracts; therefore, we . . . apply the same rules of interpretation applicable to contracts generally." Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985). Where parties contract lawfully and their contract is free from ambiguity or doubt, their agreement furnishes the law which governs them and "equity will refuse to give it another by interpretation." Elam v. Ford, 145 Va. 536, 544, 134 S.E. 670, 672 (1926). Where an agreement is plain and unambiguous in its terms, the court is duty bound to give it full force and effect. See generally Bridgestone/Firestone, Inc. v. Prince William Sq. Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995) (citing Foods First, Inc. v. Gables Assocs., 244 Va. 180, 182, 418 S.E.2d 888, 889 (1992)); Burns v. Eby & Walker, Inc., 226 Va. 218, 221, 308 S.E.2d 114, 116 (1983).

Furthermore, the General Assembly has not evinced an intent to require divorcing parties to use particular language to meet the definition of "express" and to avoid the application of Code

§ 20-109(D).[4]  And, to the extent that our prior decisions are read as requiring the parties to use the specific term "remarriage" in order to avoid the termination provision of Code § 20-109(D), I would reverse based on the ground that the decisions do not properly reflect the legislature's intent.  See Code § 17.1-402(D) ("The Court sitting en banc shall consider and decide the case and may overrule any previous decision by any panel or of the full Court.").

The legislature has furthermore evinced no intent to foreclose the judicial application of contract principles to determine the intent of the parties with respect to the duration of spousal support in the event of remarriage.[5]  The statute

---

[4] When the legislature requires specific language be used, it generally states that requirement in the Code.  See, e.g., Code § 8.2-316(2) (requiring disclaimers of an implied warranty of merchantability to "mention" the word "merchantability"); Code § 8.01-433.1 (requiring contracts authorizing confession of judgment to include specific statutory verbiage).

[5] The legislature has amended Code § 20-109(D) twice since our decision in Miller.  As the majority points out, it has not changed this Court's long-standing interpretation of the statute, requiring precise and express language to overcome the operation of § 20-109(D).  However, although the legislature is presumed to thus "'acquiesce'" in the interpretation, McFadden v. Commonwealth, 3 Va. App. 226, 230, 348 S.E.2d 847, 849 (1986) (quoting Burns v. Bd. of Supervisors, 227 Va. 354, 360, 315 S.E.2d 856, 860 (1984)), it cannot be presumed that they acquiesced in the dicta of the Gayler footnote or in subsequent holdings that rely on the dicta, including Langley.  See Metropolitan Stevedore Co. v. Rambo, 515 U.S. 291, 299 (1995). Nor can it be presumed to acquiesce in a requirement that the parties must use the word, "remarriage," in a provision regarding its effect on spousal support to overcome the statutory presumption when none of our holdings stand squarely for that proposition.

- 17 -

requires nothing more than a "stipulation" or a "contract."  In short, neither the statute nor our prior holdings forecloses construing a contract provision as "express," pursuant to well established rules, simply because certain words are not used in the formulation.

I believe the majority opinion contravenes the duty placed upon the court to interpret contracts so that the intentions of the parties are given full effect.  See Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (finding that the polestar for the construction of a contract is the intent of the contracting parties as expressed by them in the words they have used).  The majority reaches its decision on the ground that our prior decisions do not permit any other interpretation when the property settlement agreement fails to "expressly" use the word, "remarriage," in the provisions addressing the duration of support under such circumstances.  In adopting this approach, the majority improperly "read[s] into contracts language which . . . add[s] to or take[s] away from the meaning of the words already contain[ed] therein."  Great Falls Hdwe. Co. v. South Lakes Village Center Assocs., 238 Va. 123, 126, 380 S.E.2d 642, 644 (1989) (quoting Wilson, 227 Va. at 187, 313 S.E.2d at 398).  The majority relies, in part, on a footnote in our decision in Gayler to support its conclusion.  In Gayler, as noted earlier, we found the parties intended that spousal support continue in the event of remarriage based on a merged

- 18 -

reading of the parties' property settlement agreement and its

addendum.  20 Va. App. at 86, 455 S.E.2d at 280.  We stated in a

footnote, however:

> The use of the term "only" [as in the phrase
> "only upon the death of the wife"] by the
> parties is alone not determinative of the
> issue.  Absent the reference to the effect
> of remarriage in the original agreement, the
> language of the addendum standing alone
> would not be sufficient to evince an intent
> of the parties to avoid Code §§ 20-109 and
> 20-109.1.

Id. at 86 n.2, 455 S.E.2d at 280 n.2.

The majority reasons that the terms of the Hardesty

agreement, stating spousal support "cannot be terminated for any

reason," are "very similar" to the language in Gayler and that,

consistent with Gayler, the decision of the trial court must be

affirmed.  It is apparent that the meaning of the term "only" in

the Gayler footnote differs in no material respect from the

meaning of the terms used in the property settlement agreement

before us, which states that support would not terminate for

"any reason."  While it is arguable that the word "only" and the

phrase "for any reason" produce a semantically indistinguishable

result, the semantic analysis is not determinative.  The Gayler

footnote does not construe or adopt a definition of the term,

"only," in the abstract; rather, it construes the term in the

context of the contract provision hypothesized in the footnote,

viz., spousal support is to terminate "only upon death."  The

Gayler observation that such a formulation is sufficient to

- 19 -

overcome the effect of Code § 20-109(D) is not unexpected.  As framed in footnote two, the contract provision deemed insufficient is the very same provision we found inadequate in MacNelly.  However, the restatement of the MacNelly principle in the Gayler footnote does not, in itself, establish the rule that the parties must use the term, "remarriage," to signal their contemplation of the circumstance.

Furthermore, to the extent the treatment of the word, "only," in Gayler footnote two was intended to address its use in other contexts, or to extend to the treatment of any synonymous terms such as those in the present matter, those questions were not before us in Gayler.  The meaning of such terms was not necessary for the resolution of the case and constitutes dicta.[6]  It is therefore not binding upon us in addressing whether an agreement in which the parties fail to explicitly use the word, "remarriage," but are otherwise clear and unmistakable about their intent that spousal support continue, cannot be construed to reflect that intent.[7]  To the

---

[6] Black's Law Dictionary defines dicta as:  "Opinions of a judge which do not embody the resolution or determination of the specific case before the courts.  Expressions in court's opinion which go beyond the facts before court and therefore are the individual views of author of opinion and not binding in subsequent cases as precedent."  Black's, supra, at 454.

[7] In our subsequent decision in Langley, we cited to Gayler to reiterate the principle that the phrase "only upon death" is insufficient language to avoid termination of the support obligation pursuant to Code § 20-109(D).  Although both Gayler and Langley reiterate the holding we reached in MacNelly,

- 20 -

extent the majority extrapolates from the Gayler footnote the "holding" that the divorcing parties are required to use, as a matter of law and without exception, the term, "remarriage," to overcome the reach of the statute, the "holding" is likewise dicta and not binding upon us.[8]

Applying contract principles to the case at bar, I would find the parties intended that spousal support not terminate upon the wife's remarriage.  Section 15(d) of the Hardestys' PSA states, "This support cannot be terminated for any reason."  The use of the word "any" encompasses all possible reasons and circumstances which might require termination of the support obligation.  To state that the support obligation would not terminate for "any" reason is no different than stating there is no reason whatsoever that husband's support obligation not

neither decision stands for the proposition that, in all contexts, the term "remarriage" must be employed by the parties.

[8] In Gayler, the Court was called upon to construe an agreement to determine the parties' intent.  In that context, the excision by addendum of the term, "remarriage," from the agreement provision providing for the termination of support "upon the death or remarriage of the wife," was significant and, in accordance with the general principles of contract language construction, we held that the parties had contemplated the effect of "remarriage" on spousal support and intended that it continue.  In our subsequent decision in Langley, we cited to Gayler footnote two to reiterate the principle that the phrase "only upon death" is insufficient language to avoid termination of the support obligation pursuant to Code § 20-109(D), a principle first established in MacNelly.  Although both Gayler and Langley reiterate the holding we reached in MacNelly, neither decision stands for the proposition that, in all contexts, the term "remarriage" must be employed by the parties.

- 21 -

continue.  As a matter of necessary logic, it follows that wife's remarriage is not a reason for terminating her support in the case at bar.  The parties' intent is clear and unmistakable from its plain meaning.  As such, it is express; there is nothing to infer or imply from it.

Accordingly, I would reverse the decision of the trial court.

Kelsey, J., with whom Agee, J., joins, dissenting.

In my opinion, the majority correctly reads our prior panel decisions, including MacNelly v. MacNelly, 17 Va. App. 427, 430, 437 S.E.2d 582, 584 (1993), and Gayler v. Gayler, 20 Va. App. 83, 86 n.2, 455 S.E.2d 278, 280 n.2 (1995), to have

> extrapolated the phrase "unless otherwise provided" in Code § 20-109(D) to apparently require explicitly stating the words "remarriage" or "death" in a property settlement agreement in order to overcome the statutory presumption that spousal support payments terminate upon the death of a spouse or the payee spouse's remarriage.

Hardesty v. Hardesty, 39 Va. App. 102, 107, 570 S.E.2d 878, 880 (Agee, J., concurring), en banc granted, 39 Va. App. 253, 572 S.E.2d 493 (2002).

Under a fair reading of the MacNelly-Gayler extrapolation, it can be said that "[b]y inference, our decisions forbid any other language, no matter how clear or express, from rebutting the statutory presumption unless the specific words 'remarriage' or 'death' appear in the operative contract provision." Id. And that is true "regardless of how clear and unmistakable" the meaning of a contractual provision "may appear to a reader of the English language." Id.

The extrapolation of MacNelly and Gayler evolved into the ratio decidendi of Langley v. Johnson, 27 Va. App. 365, 376, 499 S.E.2d 15, 20 (1998). Relying on Gayler footnote 2, Langley held that the separation agreement "failed expressly to state

- 23 -

that the husband's support obligation would not terminate upon the wife's remarriage," id. at 376, 499 S.E.2d at 20, and any contractual language less than that would not suffice.[9]  In doing so, Langley successfully refuted the maxim, "Breath spent repeating dicta does not infuse it with life."  Metro. Stevedore Co. v. Rambo, 515 U.S. 291, 300 (1995).

The dissent's effort to distinguish these cases away does not persuade me.  For that reason, if I were sitting on a three-judge panel deciding this case, I too would take the majority's view —— being bound by prior panel precedent under the interpanel accord component of the stare decisis doctrine. See Hardesty, 39 Va. App. at 108, 570 S.E.2d at 881 (Agee, J., concurring) ("Accordingly, bound by the doctrine of stare decisis, I concur in the result.").  "This principle applies not merely to the literal holding of the case, but also to its ratio decidendi —— the essential rationale in the case that determines the judgment."  Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73-74, 577 S.E.2d 538, 540 (2003).

In view of this principle, the issue now is whether the en banc court should overrule the intended (per the majority) or

---

[9] "Indeed, the language of the parties' agreement is virtually identical to 'the language of the [Gayler] addendum standing alone [which] would not be sufficient to evince an intent of the parties to avoid the operation of Code §§ 20-109 and 20-109.1.  20 Va. App. at 86 n.2, 285 S.E.2d at 280 n.2." Langley, 27 Va. App. at 374, 499 S.E.2d at 20.

unintended (per the dissent) consequences of these prior panel decisions.  We certainly have the authority to do so.  See Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 143 (2002) (recognizing that prior panel decisions remain "subject to review by the Court of Appeals sitting en banc"); Code § 17.1-402(D) ("The court sitting en banc shall consider and decide the case and may overrule any previous decision by any panel or of the full court.").  We should exercise that authority if a "detailed inquiry" demonstrates that "a mistake exists in our prior decisions."  Armstrong v. Commonwealth, 36 Va. App. 312, 321, 549 S.E.2d 641, 645 (2001) (citations and internal quotation marks omitted).  For two reasons, I believe a mistake of that magnitude exists here.[10]

---

[10] We sit today as an en banc court reviewing prior three-judge panel decisions.  We are not reconsidering a prior en banc decision, which would be analogous to the Virginia Supreme Court reconsidering its own precedent (the situation addressed in the stare decisis citations listed by the majority).  In this respect, multi-panel appellate courts are structurally different from unitary appellate courts.  While the determinacy concerns underlying stare decisis still play an important role when an en banc court reviews a panel decision, the doctrine cannot be of such force that it binds the en banc court or in any way undermines the en banc court's duty under Code § 17.1-402(D) to provide full-court review of prior three-judge panel decisions.  See generally United States v. American-Foreign S.S. Corp., 363 U.S. 685, 689-90 (1960) ("The principal utility of determinations by the courts of appeals in banc is to enable the court to maintain its integrity as an institution by making it possible for a majority of its judges always to control and thereby to secure uniformity and continuity in its decisions, while enabling the court at the same time to follow the efficient and time-saving procedure of

A.

First, the extrapolation introduced into the law by MacNelly and Gayler, when carried to its logical extreme, as this case illustrates as well as any, produces a truly anomalous result. The majority holding boils down to a simple proposition: An agreement stating that spousal support "cannot be terminated for any reason" does not include termination for the reason of remarriage. Under the majority's reasoning, the agreement should have said something along these lines: "Support cannot be terminated for any reason, and, by saying 'for any reason,' we mean to include for the reason of remarriage."

The majority argues that even though "on its face the language of the PSA seems to clearly reflect the intent of the parties," the agreement's failure to use talismanic words creates ambiguity —— the kind that could lead to further litigation and thereby "undermine the statute's purpose." Ante, at 8; see also Hardesty, 39 Va. App. at 107, 570 S.E.2d at 880 (also noting that "on its face the language of the PSA seems to clearly reflect the intent of the parties"). The hunt for the statutory purpose of Code § 20-109(D), however, has led to a self-defeating irony: But for the magic words requirement, the

---

having panels of three judges hear and decide the vast majority of cases as to which no division exists within the court.").

- 26 -

contractual provision "on its face," ante, at 8; see also Hardesty, 39 Va. App. at 107, 570 S.E.2d at 880, provides sufficient clarity to discern the intent of the parties. The alleged ambiguity exists only because the majority discards the obvious and unqualified meaning of the word "any" in the property settlement agreement.

Had this case been decided by the application of the plain-meaning rule (which governs most other contracts in Virginia and, except for this one topic, still governs separation agreements), the trial court, the majority, and the dissent would be in full accord. Each would agree that the phrase "for any reason" means what it says and thus includes remarriage. No inductive inference is required here. The meaning comes directly from the words themselves.

In no other context have Virginia courts struggled over whether the term "any" means any. See, e.g., Sussex Cmty. Servs. Ass'n v. Va. Soc'y for Mentally Retarded Children, 251 Va. 240, 243, 467 S.E.2d 468, 469 (1996) ("The word 'any,' like other unrestrictive modifiers such as 'an' and 'all,' is generally considered to apply without limitation."); Rubin v. Gochrach, 186 Va. 786, 797, 44 S.E.2d 1, 5-6 (1947) ("The words 'any renewal' are comprehensive, and logically include more than one renewal. The meaning of the word 'any' in the connection in which it was used seems to be clear and deliberate."); Cox v. Cox, 16 Va. App. 146, 148, 428 S.E.2d 515, 516 (1993) ("The

plain and unambiguous meaning of the word 'any' is 'one or more indiscriminately from all those of a kind.'" (quoting Webster's Third New International Dictionary 97 (1981))).  In this case, therefore, the quest for greater clarity and less litigation has produced neither.

B.

Second, when the legislature requires that a verbatim contractual term be used, its enactments usually say exactly that.  See, e.g., Code § 8.2-316(2) (requiring disclaimers of an implied warranty of merchantability to "mention" the word "merchantability"); Code § 8.01-433.1 (requiring contracts authorizing confession of judgment to include specific statutory verbiage).  Because Code § 20-109(D) includes no such requirement, it should not be added by interpretative accretion even if we could be persuaded that doing so would improve upon the basic point of the statute.  "Courts are not allowed to write new words into a statute plain on its face."  Shenk v. Shenk, 39 Va. App. 161, 171, 571 S.E.2d 896, 901 (2002) (quoting Flanary v. Milton, 263 Va. 20, 23, 556 S.E.2d 767, 769 (2002)); see also SIGNAL Corp. v. Keane Fed. Sys., Inc., 265 Va. 38, 46, 574 S.E.2d 253, 257 (2003) (courts are "not free to add language" to statutes under the guise of interpretation); Woods v. Mendez, 265 Va. 68, 75, 574 S.E.2d 263, 267 (2003) (courts cannot "add words to the statute").

- 28 -

The majority's suggestion that today's decision represents a cautious, and thus commendable, deference to the legislature is unconvincing.  See Ante, at 7.  We are asked to believe that the General Assembly has implicitly endorsed the majority's holding because the legislature has not amended the statute to repeal our prior panel decisions.  From that inaction, the majority reasons, we should infer the General Assembly has by silence put its legislative imprimatur on the majority's interpretation of Code § 20-109(D) because the legislature is "presumed to know the law."  Ante, at 7.

I concede the value of the general principle underlying this view.  See, e.g., Burns v. Bd. of Supervisors, 227 Va. 354, 360, 315 S.E.2d 856, 860 (1984).  But I would not apply it to cases where, as here, the interpretation that the legislature has allegedly endorsed by inaction is both unsettled and a product of piling dicta upon dicta.  See Metro. Stevedore Co., 515 U.S. at 299-300.  Legislative inaction "lacks persuasive significance," Brown v. Gardner, 513 U.S. 115, 121 (1994) (citation omitted), when it can be shown that "several equally tenable inferences may be drawn from such inaction," Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 187 (1994) (quoting Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 650 (1990)).  See also Zuber v. Allen, 396 U.S. 168, 185-86 n.21 (1969) ("The verdict of quiescent years

cannot be invoked to baptize a statutory gloss that is otherwise impermissible.").

We need go no further than the differing views of the majority and the principal dissent in this case to see that neither interpretation of our prior precedents has claimed a strong consensus.  That being true, how confident can we be that the General Assembly previously guessed the interpretation the majority adopts today and then silently decided to endorse that particular interpretation by not rewriting the statute? Under these circumstances, legislative silence is a "poor beacon to follow in discerning the proper statutory route."  Zuber, 396 U.S. at 185.  The only sure guide is the altogether ordinary task of reading the statutory text and applying its plain meaning.  See Patterson v. Commonwealth, 39 Va. App. 610, 617, 575 S.E.2d 583, 586-87 (2003).  Because the magic-words extrapolation of our prior panel opinions cannot be grounded in the plain meaning of Code § 20-109(D), and therefore reflects that a mistake exists in our prior decisions, I respectfully dissent.