COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, Beales and Decker
Argued by teleconference

UNPUBLISHED

BARBARA DEANNE SMITH

MEMORANDUM OPINION[*] BY
v.      Record No. 1483-14-1      JUDGE MARLA GRAFF DECKER
APRIL 7, 2015

ERIC WENDELL THOMPSON

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Mary Jane Hall, Judge

Kellam T. Parks (T. Alexander Cloud, Jr.; The Law Office of Kellam
T. Parks, PLLC, on brief), for appellant.

No brief or argument for appellee.


Barbara Deanne Smith (the wife) appeals a decision of the circuit court that certain benefits

to which she was entitled pursuant to her written agreement with Eric Wendell Thompson (the

husband) upon their separation and divorce terminated when she remarried. The wife contends that

the agreement provided for payments that were expressly "in lieu of" spousal support. Accordingly,

she argues that Code § 20-109(D), which states that spousal support terminates upon the recipient's

remarriage absent an express provision to the contrary, does not apply. We hold that the financial

obligations at issue were spousal support for purposes of Code § 20-109(D) and terminated upon the

wife's remarriage. Therefore, we affirm the circuit court's ruling. We also decline the wife's

request for an award of attorney's fees and costs on appeal.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

The parties had a child together in 1991 and married in 1994. They separated in 2006. They signed a joint property settlement agreement on May 1, 2008. Their child was seventeen years old at that time. The agreement was the product of the parties' joint meeting with a lawyer, as well as input that they received from the husband's stepsister, who was a paralegal, and the wife's employer, who had a law degree but did not practice law.

The agreement was structured as a series of twelve separately numbered paragraphs. The first section, titled "Generally," included the statement that the parties intended by "th[e] agreement[] to make a final and complete settlement of all of [their] rights and obligations concerning child custody and division of property." This overview section did not mention spousal support. However, a subsequent section, Paragraph IV, addressed child and spousal support. Paragraph V addressed the division of marital property and debts.

More specifically, the agreement provided as follows regarding child and spousal support:

> IV. WAIVER OF RIGHT TO SUPPORT: In consideration of the other terms of this agreement, and whereas both spouses are fully self supporting, both parties waive all right or claim which they may now have to receive support or maintenance from the other, *subject to the below listed provisions.* No court shall have jurisdiction to award spousal support at any time regardless of any circumstances that may arise, *other [than] those expressly listed within this agreement.*
>
> A. Husband acknowledges that he is presently liable to wife for the cost of child care and support in the amount of $200 a month . . . up to and including (with final payment) July 1, 2009.
>
> B. Wife agrees to waive receipt of spousal support in lieu of:
>
>> 1. Husband maintaining the cost of medical, dental and auto insurance coverage for Wife and Minor Child, cost of all personal property taxes on the two vehicles currently owned by the parties and monthly cost of

> maintenance and insurance of the Sprint cell phones for Wife and Minor Child.
>
> 2. Husband will continue to maintain life insurance policies on Husband, naming Wife as beneficiary and in the event of Wife pre-deceasing Husband, beneficiary will be Minor Child . . . .

(Emphases added).

A final decree of divorce that affirmed, ratified, and incorporated the agreement was entered July 14, 2008. In February 2009, the wife remarried.

About five years after the divorce, in August 2013, the wife filed a petition seeking issuance of a rule to show cause requiring the husband to explain why he had not maintained the various types of insurance required by the parties' agreement or paid the personal property taxes and cellular telephone expenses.[1] At the subsequent show cause hearing, the wife conceded that the parties' agreement was not "the most artfully drafted document" but emphasized that it specifically referred to the payments at issue as being "in lieu of" spousal support.[2] She argued, in the alternative, that if the agreement was ambiguous, the intent of the parties would be relevant, and she presented her own unrebutted testimony on the issue of intent. The husband contended that the insurance, tax, and cell phone expenses were items to be paid "in kind" and were "in the nature . . . of spousal support" because they were grouped with the provision of the agreement concerning spousal support. As a result, he contended that his obligation to pay them terminated upon the wife's remarriage in early 2009. The trial court agreed with the husband, characterizing the obligations at issue as "spousal support in kind" such that they terminated upon the wife's remarriage.

---

[1] The wife also contended that the husband failed to pay child support. That matter was addressed at the hearing, was decided in the wife's favor, and is not in dispute in this appeal.

[2] The wife concedes that the husband's obligation to pay the listed expenses for the parties' daughter terminated when the daughter reached the age of majority.

II.  ANALYSIS

The wife argues on appeal that the circuit court erred in concluding that the obligations at issue are for all practical purposes spousal support payments that terminated upon her remarriage.  She also seeks an award of attorney's fees and costs.  We hold that the circuit did not err in classifying the obligations as spousal support payments.  Further, we deny the wife's request for an award of attorney's fees and costs on appeal.

### A.  *The Agreement and the Wife's Remarriage*

Our appellate review of the circuit court's ruling requires us to examine both the statutory scheme and the provisions of the parties' agreement.  That review is governed by well-established principles.  The construction of a statute is a question of law that we review *de novo* on appeal.  See, e.g., Dowling v. Rowan, 270 Va. 510, 519, 621 S.E.2d 397, 401 (2005).  Similarly, the construction to be given a settlement agreement entered into upon divorce, like any contract, is a question of law as long as the contract is not ambiguous.  See, e.g., Stacy v. Stacy, 53 Va. App. 38, 43-44, 669 S.E.2d 348, 350-51 (2008) (*en banc*).[3]

Upon divorce, a spouse may seek court-ordered spousal support based on various statutory factors.  See Code § 20-107.1.  Alternatively, the parties may enter into an agreement regarding the payment or nonpayment of spousal support.  See Code § 20-109.  "'Court ordered support is intended to place the burden on a spouse or parent to maintain his or her family rather than placing that burden on the state.'"  Wiencko v. Takayama, 62 Va. App. 217, 232, 745 S.E.2d 168, 175 (2013) (quoting Williams v. Williams, 4 Va. App. 19, 24, 354 S.E.2d 64, 66 (1987)).  An agreement concerning spousal support may achieve the same goal.  Cf. id.

---

[3] Only if an agreement is ambiguous may parol testimony be accepted to determine its meaning.  See, e.g., Stroud v. Stroud, 49 Va. App. 359, 367, 641 S.E.2d 142, 146 (2007).  An agreement is not ambiguous "'merely because the parties disagree as to the meaning of the terms used.'"  Stacy, 53 Va. App. at 42 n.3, 669 S.E.2d at 350 n.3 (quoting Plunkett v. Plunkett, 271 Va. 162, 168, 624 S.E.2d 39, 42 (2006)).

Spousal support may take various forms. A court may order that statutory support be made in periodic payments for a defined or undefined duration, in lump sum, or "in any combination thereof." Code § 20-107.1(C). Also, spousal support payments may be made directly to the obligee spouse or, upon court order or agreement, indirectly to a third party on the obligee spouse's behalf. See, e.g., Code § 20-107.1(H)(5) (implicitly recognizing the ability of a court to order "in kind" payments by imposing certain requirements on spousal support payments "ordered to be paid directly to the obligee"); Duvall, Blackburn, Hale & Downey v. Siddiqui, 243 Va. 494, 496-98 & n.1, 416 S.E.2d 448, 449-50 & n.1 (1992) (classifying as "'in kind' support" certain payments, including utilities and auto expenses, that the husband agreed to make "directly" to third parties).

Code § 20-109, in relevant part, provides that spousal support terminates upon the remarriage of the party receiving support "[u]nless otherwise provided by stipulation or contract." Code § 20-109(D); see also Code § 20-109.1 (making clear that this principle also applies if the court affirms, ratifies, and incorporates an agreement between separating or divorcing parties into its decree). In order to avoid this automatic termination, the statute "contemplates an expressed, not implied, [contractual] provision that [spousal] support shall not terminate upon death or remarriage." Radford v. Radford, 16 Va. App. 812, 813, 433 S.E.2d 35, 36 (1993); see Hardesty v. Hardesty, 40 Va. App. 663, 669-70, 581 S.E.2d 213, 216-17 (2003) (*en banc*); Miller v. Hawkins, 14 Va. App. 192, 197, 415 S.E.2d 861, 864 (1992). The statute's purpose in requiring an express provision to continue spousal support after remarriage is to "resolv[e] ambiguity" and thereby "reduce[] litigation." Radford, 16 Va. App. at 813, 433

- 5 -

S.E.2d at 36.[4] "To permit its mandate to be overcome by implication would introduce ambiguity, encourage litigation and, thereby, undermine the statute's purpose." Id.

Here, the wife contends that the parties' agreement for the husband to pay certain expenses on her behalf is not subject to automatic termination under Code § 20-109(D) because the payments at issue are made expressly "in lieu of" spousal support rather than "as and for" spousal support. Paragraph IV(B) of the agreement, viewed alone, provides that the wife waives the right to spousal support and agrees to the husband's payment—"in lieu of" spousal support— of the various other types of benefits listed. Those benefits include health, automobile, and life insurance, personal property taxes, and expenses for cellular telephone service. Therefore, she argues, the trial court erred in holding that the payments were spousal support for purposes of Code § 20-109(D) and terminated upon her remarriage.

This Court, however, must review the document in its entirety along with the applicable statutes and case law. In construing a contract, settled principles provide that a court must avoid treating a word or clause as "'meaningless if a reasonable meaning can be given to it.'" Stacy, 53 Va. App. at 48, 669 S.E.2d at 352-53 (quoting Dominion Sav. Bank, FSB v. Costello, 257 Va. 413, 417, 512 S.E.2d 564, 567 (1999)) (internal quotation marks omitted). Additional principles of construction provide that the reviewing court must interpret a contract as a whole, harmonizing its parts when possible. Id. at 48, 669 S.E.2d at 353. Mere "unartful[]" drafting does not render an agreement ambiguous "if its parts can be read together without conflict." Doswell Ltd. P'ship v. Va. Elec. & Power Co., 251 Va. 215, 223, 468 S.E.2d 84, 88 (1996).

---

[4] Such a statute is based on the presumption that the "legal obligation of support embodied in the new marital relationship" minimizes the risk of need for state intervention to provide support. See Voyles v. Voyles, 644 P.2d 847, 849 (Alaska 1982), modified by Hixson v. Sarkesian, 66 P.3d 753, 760 (Alaska 2003). Ending "the obligation of support from the past marital relationship," in turn, increases the ability of the "independent spouse" to "enter into a new marital relationship, raise a family, or take on [other] new financial responsibilities." Voyles, 644 P.2d at 849.

Applying these principles, we conclude that the trial court did not err in its construction of the parties' agreement.

Paragraph IV of the agreement covers spousal support and child support. Although it is titled "Waiver of Right to Support," it specifically provides for a set amount of monthly child support in Paragraph IV(A). Clearly, therefore, it does not reflect a waiver of *all* support. Further, the introductory paragraph that follows the heading and precedes the lettered and numbered subparagraphs contains additional relevant language. The first sentence of that paragraph refers generally to all types of support. It states that both parties waive any right to "receive support or maintenance from the other," but it makes that waiver "*subject to the below listed provisions*." (Emphasis added). This language, although general, implies that the provisions that follow involve support. The second sentence of the introductory paragraph is more specific and states that no court has jurisdiction to award "spousal support at any time regardless of any circumstances . . . , *other [than] those expressly listed within this agreement*." (Emphasis added). This language, like the language in the first sentence, implies that payments made pursuant to other "circumstances" listed in this portion of the agreement do, in fact, constitute spousal support.

It was within this structural framework that the parties provided for the payment of child support in Paragraph IV(A) and the benefits at issue in Paragraph IV(B). The meaning we glean from the language and structure of Paragraph IV as a whole is that the phrase "in lieu of [spousal support]" is simply shorthand for the fact that the agreement does not require the husband to pay periodic spousal support directly to the wife in a fixed monthly sum. We conclude that, in the context of the entire agreement, the payments to be made on the wife's behalf are a form of spousal support for purposes of Code § 20-109(D).

This Court's decision in <u>McCoy v. McCoy</u>, 55 Va. App. 524, 687 S.E.2d 82 (2010), supports this conclusion. In <u>McCoy</u>, this Court held that under the language of an agreement entered into between former spouses and incorporated into their divorce decree, the former husband's obligation to provide health insurance coverage for his former wife was *not* spousal support. <u>Id.</u> at 529-30, 687 S.E.2d at 84. The Court noted that "the spousal support section and the insurance section [of the agreement] are completely separate, with several sections regarding distribution of the marital assets and debt coming between them." <u>Id.</u> at 529, 687 S.E.2d at 84. We further noted that the structure and operation of the two provisions were also separate. <u>Id.</u> The former "[h]usband's obligation to provide the insurance arose when he signed the agreement . . . ." <u>Id.</u> Regarding spousal support, however, the former wife specifically released her ex-husband "'from any and all claims for her support and maintenance as his [former] [w]ife, provided that the [former] [h]usband shall, at all times, perform his obligations as stated in th[e] [a]greement.'" <u>Id.</u> at 526, 687 S.E.2d at 82-83 (emphasis omitted). The Court ultimately ruled that health insurance was not a form of spousal support under the agreement. <u>Id.</u> at 530, 687 S.E.2d at 84. We reached this conclusion for two reasons: (1) the agreement defined spousal support as an obligation that would arise, if at all, "in the future due to [the former] husband's failure to abide by the agreement" and (2) the former husband's obligation to provide health insurance "[did] not arise *because* he breached the agreement." <u>Id.</u> at 529-30, 687 S.E.2d at 84 (emphasis added).

In the instant case, by contrast, the husband's obligation to provide the insurance and other benefit payments at issue was specifically set out in the same section in which the wife agreed to waive the "recei[pt] [of] support or maintenance [directly] from the [husband]." Most importantly, her waiver of the right to that support was expressly made "subject to the below listed provisions," which were specifically itemized in that same section of the agreement.

Those provisions included the husband's duty to maintain the cost of medical, automobile, and life insurance coverage for or on behalf of the wife; all personal property taxes on the two vehicles owned by the parties; and monthly "maintenance and insurance" for the wife's cell phone. Thus, the wife waived one form of spousal support, periodic monthly payments to her in a set dollar amount, in exchange for receiving support in a different form, various "in kind" payments for insurance, personal property taxes, and cell phone service. Cf. Code §§ 20-60.3(8)(a), 20-107.1(H)(3) (providing that certain orders directing the payment of spousal support shall include a "statement as to whether there is an order for health care coverage" for a spouse or former spouse); Code § 20-108.1(C) (authorizing a court determining child support "to order either party or both parties to provide . . . health care coverage for a spouse or former spouse"); Wroblewski v. Russell, 63 Va. App. 468, 480-81 & n.6, 759 S.E.2d 1, 7 & n.6 (2014) (holding that "the Code evinces an unmistakable legislative intent to permit trial courts to enter . . . an order" directing one spouse in a divorce to pay the health insurance premiums of the other spouse and that "[a]n order directing [such payment] . . . is best conceptualized as a component part of the maintenance and support of the spouse receiving the premiums").

The parties could easily have opted to override the automatic termination effected by Code § 20-109(D) by expressly providing that the payments at issue were not to terminate under that code section upon the wife's remarriage. They did not do so.

Accordingly, we conclude that Code § 20-109(D) applies and the husband's obligation terminated by operation of law. To hold otherwise on the facts of this case would defeat the General Assembly's purpose of resolving any uncertainty in favor of termination. Cf. Hardesty, 40 Va. App. at 667-70, 581 S.E.2d at 216-17 (holding that a provision stating "that spousal support 'cannot be terminated for any reason'" is insufficient to meet the specificity requirement of Code § 20-109(D) and that "'any attempt to abrogate [its effect] requires express language

either citing the statute or expressly stating that remarriage does not terminate the obligation'" (quoting MacNelly v. MacNelly, 17 Va. App. 427, 430, 437 S.E.2d 582, 584 (1993))).

*B. Attorney's Fees on Appeal*

The wife seeks an award of attorney's fees and costs on appeal. Whether to award attorney's fees and costs on appeal is discretionary. This Court takes into consideration factors such as whether the requesting party has prevailed or other reasons exist to support an award of fees and costs. See, e.g., Estate of Hackler v. Hackler, 44 Va. App. 51, 75, 602 S.E.2d 426, 438 (2004); O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). Here, the wife has not prevailed. In addition, she has presented no evidence or argument on brief advancing any other grounds upon which an award of fees and costs might be warranted. Thus, we decline the wife's request for an award of attorney's fees and costs.

III. CONCLUSION

We hold that the financial obligations at issue were spousal support for purposes of Code § 20-109(D) and terminated upon the wife's remarriage. Therefore, we affirm the circuit court's ruling. We also decline the wife's request for an award of attorney's fees and costs on appeal.

Affirmed.